# United States Court of Appeals for the Federal Circuit

---

(Opposition No. 91163853)

**MIDWESTERN PET FOODS, INC.,**
*Appellant,*

v.

**SOCIETE DES PRODUITS NESTLE S.A.,**
*Appellee.*

---

2011-1482

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

---

Decided: July 9, 2012

---

TIMOTHY D. PECSENY, Blank Rome LLP, of Philadelphia, Pennsylvania argued for appellant.

THOMAS A. POLCYN, Thompson Coburn LLP, of St. Louis, Missouri, argued for appellee. With him on the brief was MATTHEW A. BRAUNEL.

---

Before BRYSON, MAYER, and DYK, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* BRYSON.
Concurring in part and dissenting in part opinion filed by
*Circuit Judge* DYK.

BRYSON, *Circuit Judge.*

Midwestern Pet Foods, Inc., appeals from the decision of the Trademark Trial and Appeal Board denying registration of its mark, WAGGIN' STRIPS. Because substantial evidence supports the Board's finding of a likelihood of confusion between Midwestern's WAGGIN' STRIPS mark and the registered BEGGIN' STRIPS mark owned by Societe des Produits Nestle S.A. ("Nestle"), and because the Board committed no reversible procedural error in admitting evidence submitted by Nestle, we affirm.

I

Nestle's BEGGIN' STRIPS registered mark for pet treats has been in continuous use since 1988 and has been registered since 1989. Midwestern manufactures, markets, and sells dog and cat treats. In connection with the introduction of a new product, Midwestern filed an intent-to-use application with the Patent and Trademark Office seeking to register the mark WAGGIN' STRIPS for pet food and edible pet treats. Nestle opposed registration, arguing in relevant part that there was a likelihood of confusion between the two marks.

During pre-hearing discovery, Midwestern served document requests and interrogatories on Nestle. Nestle objected to the discovery requests, alleging that various of the requests were overbroad and unduly burdensome, that certain of the requested documents were irrelevant, and that certain of the documents were protected by the attorney-client privilege and the work-product doctrine or

were proprietary in nature and were not required to be produced prior to the entry of a protective order. In response to several of the requests, Nestle agreed to produce "at a mutually agreeable time and place" non-privileged documents to the extent the requests were not objectionable on some other basis. In response to several other requests, Nestle agreed to reconsider its responses if Midwestern would narrow its requests. After the entry of a protective order to address concerns about confidentiality, Midwestern did not take any further steps to arrange for the production of the documents that Nestle had agreed to produce, nor did it narrow any of its requests or move to compel the production of any of the requested documents.

Following discovery, the Board conducted a hearing at which both parties presented evidence and witness testimony. Nestle introduced advertising, sales, and marketing evidence. Nestle also relied on evidence of the fame of its mark that post-dated Midwestern's intent-to-use application. Midwestern objected to Nestle's evidence on both of those issues, but the Board overruled most of the objections. As for the advertising, sales, and marketing evidence, the Board struck one exhibit on the ground that the exhibit was responsive to one of Midwestern's document requests, but that Nestle had represented that no documents responsive to that request existed. The Board dismissed Midwestern's objections to the other exhibits, finding that Nestle's discovery responses "in no way led [Midwestern] to believe that no documents satisfied [its] discovery requests." The Board further ruled that because Midwestern was dissatisfied with Nestle's failure to produce documents in response to its document requests, it was incumbent upon Midwestern to file a timely motion to compel as a means of testing Nestle's objections. Having failed to do so, the Board ruled, Midwestern had

waived its right to object to particular evidence on the ground that Nestle should have produced it during discovery but did not. As for the evidence of fame, the Board held that although most of that evidence was not relevant to Nestle's claim of dilution of its mark, the evidence was relevant to the issue of likelihood of confusion.

On the merits, the Board rejected Nestle's claim of trademark dilution because it found that Nestle had not shown that its BEGGIN' STRIPS mark had the fame necessary to support a dilution claim. However, the Board upheld Nestle's claim of likelihood of confusion. After considering each of the factors bearing on the likelihood of confusion, the Board concluded that the marks were likely to lead to consumer confusion, "principally because the goods are identical, the channels of trade and classes of purchasers are the same, and the marks are similar in appearance, sound, connotation and commercial impression." Accordingly, the Board sustained the opposition to Midwestern's application.

## II

Midwestern argues that the Board erred by failing to sustain Midwestern's objection to the admission of Nestle's evidence of its advertising, sales, and marketing activities relating to the BEGGIN' STRIPS mark. Midwestern's argument is based on Nestle's failure to produce those documents in response to various of Midwestern's discovery requests. According to Midwestern, Nestle should not have been allowed to introduce at trial any of the documents it failed to produce in discovery.

As an initial matter, because Nestle's opposition was filed prior to 2007, when Board procedures were amended to require mandatory initial disclosures, *see* 72 Fed. Reg.

42,259 (Aug. 1, 2007), Nestle was not obligated to specify in advance of trial the evidence it intended to present in support of its case or to identify which witnesses it intended to call. *See Carefirst of Md., Inc. v. FirstHealth of the Carolinas, Inc.*, 77 U.S.P.Q.2d 1492, 1500 (T.T.A.B. 2005); *Time Warner Entm't Co. v. Jones*, 65 U.S.P.Q.2d 1650, 1656 (T.T.A.B. 2002); *British Seagull Ltd. v. Brunswick Corp.*, 28 U.S.P.Q.2d 1197, 1201 (T.T.A.B. 1993), *aff'd*, 35 F.3d 1527 (Fed. Cir. 1994); *Charrette Corp. v. Bowater Commc'n Papers Inc.*, 13 U.S.P.Q.2d 2040, 2041 (T.T.A.B. 1989). For cases governed by the pre-2007 procedures, the Board has routinely held that parties do not have a right to disclosure of the documents and witnesses the opposing party intends to rely on at trial. *Time Warner*, 65 U.S.P.Q. at 1656; *British Seagull*, 28 U.S.P.Q.2d at 1201 ("Applicant could have simply declined to answer opposers' interrogatories on the ground that it was not required to specify in detail the evidence it intended to present at trial.").

Moreover, with respect to the documents at issue on appeal, Nestle objected to the production requests on various grounds, including the breadth of the requests. It agreed to produce some of the requested documents at a mutually agreeable time and place, however, and it agreed to reconsider several of Midwestern's document requests if Midwestern would narrow the requests. The Board ruled that if Midwestern was dissatisfied with Nestle's response, it was incumbent upon Midwestern to file a timely motion to compel or to modify its interrogatories. Because "it was applicant's own inaction that prevented applicant from obtaining opposer's evidence prior to trial," the Board held that Midwestern could not claim

prejudice based on Nestle's failure to produce the disputed documents.[1]

Having objected to Midwestern's propounded discovery, Nestle was not obliged to produce the disputed documents absent a request by Midwestern to have the Board rule on Nestle's objections. Board precedent and procedures applicable to pre-2007 cases such as this one required Midwestern to move to compel production in order to test the sufficiency of Nestle's response. *Time Warner*, 65 U.S.P.Q.2d at 1656-57 (in response to opposer's objection to interrogatories on the grounds that they were unduly burdensome and violative of the attorney-client privilege, the work product doctrine, and claims of confidentiality, "applicant never filed a motion to compel further responses from opposer; applicant will not now be heard to complain that opposer's discovery responses were inadequate"); *see* Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 523.04 ("If a party that served a request for discovery receives a response thereto which it believes to be inadequate, but fails to file a motion to challenge the sufficiency of the response, it may not thereafter be heard to complain about the sufficiency thereof."); 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 20:113 (4th ed. 2012) (same).

The Board has applied that principle consistently for years, even in cases in which the party that objected to

---

[1] Nestle objected to some of Midwestern's requests on relevancy grounds to the extent they bore on the question of priority, which was not a disputed issue in the opposition proceeding. Midwestern did not seek to compel the production of those documents, nor did it challenge Nestle's characterization of those documents as going to the issue of priority.

the production of the disputed materials later sought to introduce some of the same materials at trial. *See H.D. Lee Co. v. Maidenform Inc.*, 87 U.S.P.Q.2d 1715, 1719 (T.T.A.B. 2008) ("If applicant was unsatisfied with opposer's failure to respond to its discovery requests, it was required to file a motion to compel discovery, failing which applicant waived its right to object to such testimony and evidence on the ground that it was not produced during discovery."); *Carefirst of Md., Inc.*, 77 U.S.P.Q.2d at 1500 ("[I]f applicant believed that opposer's responses were inadequate, it was obligated to test the sufficiency of the responses by way of a motion to compel, which applicant failed to do."); *Linville v. Rivard*, 41 U.S.P.Q.2d 1731, 1733 (T.T.A.B. 1996) (permitting introduction of documents by respondent that were within the scope of petitioner's discovery request, but to which respondent had objected as vague and burdensome, where petitioner did not move to compel discovery).

The dissent would invalidate that procedure on the ground that it is inconsistent with court decisions applying the Federal Rules of Civil Procedure. While the Board has followed the federal rules with regard to discovery matters in most respects, it has not adopted those rules in toto, and it has retained discretion to adopt discovery rulings suited to matters before it in order to balance the parties' interests. *See Pioneer Kabushiki Kaisha v. Hitachi High Techs. Am., Inc.*, 74 U.S.P.Q.2d 1672, 1678 n.10 (T.T.A.B. 2005); *FMR Corp. v. Alliant Partners*, 51 U.S.P.Q.2d 1759, 1761 (T.T.A.B. 1999); *Harjo v. Pro-Football, Inc.*, 50 U.S.P.Q.2d 1705, 1715 (T.T.A.B. 1999). In particular, the Board has developed its own procedure for dealing with discovery disputes such as the one in this case, as shown by the cases cited by the Board and those cited earlier. Because Midwestern was on notice of that procedure, there was no unfair surprise in applying that

procedure and admitting the disputed evidence when Midwestern failed to take the steps required by the Board to preserve a discovery claim.

In certain cases, the Board has barred parties from introducing evidence that was not produced during discovery, even in the absence of a motion to compel, such as when the party from which discovery is sought represents that there are no documents responsive to the discovery request and then seeks to introduce documents that fall within the scope of the request. *See Weiner King, Inc. v. Wiener King Corp.*, 615 F.2d 512, 521 (CCPA 1980) (party's representation that all relevant facts were already of record); *Super Valu Stores, Inc. v. Exxon Corp.*, 11 U.S.P.Q.2d 1539, 1542-43 (T.T.A.B. 1989) (party's representation that it had no responsive evidence). In those cases, however, the withholding party represented that it had no relevant documents that would be used at trial or refused to allow access to the requested documents. Here, with the exception of the exhibit as to which the Board sustained Midwestern's objection, Nestle's responses consisted of objections to the production of the documents requested, not representations that the requested documents did not exist.

Supervision of discovery, and in particular the application of the preclusion sanction, lies within the Board's discretion. *See Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1388 n.1 (Fed. Cir. 1989); *FMR*, 51 U.S.P.Q.2d at 1761; TBMP § 527.01(e) ("In instances where a party does not 'unequivocally refuse' to provide information in response to discovery requests, the preclusion sanction under Fed. R. Civ. P. 37(c)(1) may not apply."). In view of Midwestern's failure to follow up on Nestle's offers to produce certain materials at a mutually agreeable time and place and to respond to narrower document requests,

and in view of Midwestern's failure to test the sufficiency of Nestle's objections to the discovery requests by moving to compel the production of the requested materials, we hold that the Board did not abuse its discretion by refusing to strike Nestle's evidence.

## III

Midwestern next argues that the Board improperly allowed Nestle to rely on evidence of the fame of the BEGGIN' STRIPS mark that postdated the filing of the WAGGIN' STRIPS application. Midwestern argues that such evidence is improper in analyzing the likelihood of confusion because evidence of the fame of an opposer's mark must predate the applicant's filing date in order to be admissible in an opposition proceeding. As the Board pointed out, however, Midwestern misreads the Board's precedent. Contrary to Midwestern's contention, evidence of post-application fame, although not relevant to the issue of dilution of the opposer's mark, *see* 15 U.S.C. §§ 1053, 1125(c), is relevant to the issue of likelihood of confusion. And while a party asserting dilution in an opposition proceeding must establish that its mark had become famous prior to the filing date of an intent-to-use application, *Toro Co. v. ToroHead Inc.*, 61 U.S.P.Q.2d 1164, 1174 (T.T.A.B. 2001), no such restriction applies to the use of evidence of the strength of a mark for purposes of showing likelihood of confusion. *Id.* at 1170 ("[F]ame for likelihood of confusion purposes and fame for dilution purposes are not necessarily the same. A mark may have acquired sufficient public recognition and renown to demonstrate that it is a strong mark for likelihood of confusion purposes without meeting the stringent requirements to establish that it is a famous mark for dilution purposes."); *see generally Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir.

2012). The Board therefore did not err in considering Nestle's post-application evidence of fame in assessing the likelihood of confusion in this case.

## IV

As to the merits, Midwestern argues that the Board erred when it found that Midwestern's WAGGIN' STRIPS mark is confusingly similar to Nestle's BEGGIN' STRIPS mark. In finding a likelihood of confusion, the Board analyzed the relevant factors: the fame of Nestle's mark; the similarity of the goods, the channels of trade, and purchasers; the conditions of sale; the similarity of the marks; and Midwestern's intent. *See In re E. I. Du Pont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973).

Midwestern first argues that because the Board found that Nestle's mark was not famous, it should have afforded the mark only a narrow scope of protection. While the Board found that BEGGIN' STRIPS was not a famous mark entitled to the broadest protection, it accorded the mark a broad scope of protection based on all the evidence presented to it—essentially holding that this factor weighed slightly in favor of Nestle.

The Board characterized some of Nestle's evidence of fame as unconvincing, such as the sales figures for products bearing the BEGGIN' STRIPS mark, which carried little weight in the absence of sales figures for competing products. Nonetheless, the Board recognized that the BEGGIN' STRIPS mark has been in use since at least 1988 and that products bearing the mark have been advertised, marketed, and sold throughout the nation. The Board found that Nestle's sales of products carrying the BEGGIN' STRIPS trademark were attributable, at least in part, to the considerable sums Nestle has ex-

pended on advertising.  In that regard, Nestle has covered a broad spectrum of advertising media in seeking to promote the mark.  *See Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1371 (Fed. Cir. 2002) ("fame of a mark may be measured . . . by the volume of sales and advertising expenditures of the goods traveling under the mark, and by the length of time those indicia of commercial awareness have been evident").  Substantial evidence thus supports the Board's finding that BEGGIN' STRIPS, although not a famous mark, has enjoyed "at least a high degree of recognition" that has rendered the mark "distinctive and strong and entitled to a broad level of protection."  *See Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1375 (Fed. Cir. 2005) (likelihood-of-confusion fame "varies along a spectrum from very strong to very weak").

Midwestern attempts to distinguish the WAGGIN' STRIPS and BEGGIN' STRIPS marks by parsing their appearance, meaning, sound, and impression.  The evidence recited by the Board, however, supports the Board's finding that the marks are confusingly similar.  While both Midwestern and Nestle have disclaimed the STRIPS portion of their marks, each mark must be viewed in its entirety.  *Schwarzkopf v. John H. Breck, Inc.*, 340 F.2d 978 (CCPA 1965).  In addition, both marks use the standard character format, so any specific differences in design are not relevant.

As the Board noted, the two marks have the same format, structure, and syntax.  Both consist of two words.  The second word in each mark is identical.  The first word in each mark ends with GGIN', the IN' being the informal -IN' suffix of the present participle form of the verb.  While the two verbs are different, the verb in both marks consists of a single syllable, and the marks have generally

similar pronunciations, cadences, and intonations. Beyond that, the verbs "wag" and "beg" both suggest dog behavior, and in particular both convey the excitement exhibited by dogs during feeding. Although the Board acknowledged that the mark BEGGIN' STRIPS also suggests "bacon strips" to some consumers, the Board reasonably concluded that the implicit reference to "bacon" did not detract from the similarity of the two marks in both sound and meaning.

The Board further pointed out that the two marks are used in connection with identical products, and that the products would be sold in the same channels of trade and to the same consumers. Moreover, the Board noted that the products are inexpensive items that would be purchased by ordinary consumers who would be likely to exercise no more than ordinary care in making their purchases. Notwithstanding the differences between the marks that are evident when viewed side by side, the Board pointed out that the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but whether they are sufficiently similar in their overall commercial impression. The ultimate inquiry is whether, in light of the conditions of their sale, "confusion as to the source of the goods offered under the respective marks is likely to result." Applying that test, the Board found that consumer confusion was likely. That finding is supported by substantial evidence.

Midwestern contends that similar third-party marks are in use on similar goods in the market and that the evidence of similar third-party marks undercuts the evidence of likelihood of confusion. As the Board noted, however, a number of the marks on Midwestern's list either relate to different products, such as animal leashes or pet grooming services, or are substantially different

marks, such as BARK N BAC'N, WAGGIN' TRAIN BRAND WOOFLES, and MINI BACON FLAVOR STRIPS, and are not relevant. As the Board found, none of the third-party marks are close to the marks at issue in this case. The Board therefore properly found Midwestern's evidence of third-party use unpersuasive.

Although Nestle did not introduce consumer survey evidence in support of its showing of a likelihood of confusion, neither the Board nor this court has required survey evidence in order to show a likelihood of confusion. *See, e.g.*, *Bose Corp.*, 293 F.3d at 1374; *T.A.B. Sys. v. PacTel Teletrac*, 77 F.3d 1372, 1375 (Fed. Cir. 1996) (survey evidence not required to prove analogous use); *McDonald's Corp. v. McClain*, 37 U.S.P.Q.2d 1274, 1277 (T.T.A.B. 1995) ("Nor is there authority for contending that opposer had the duty to conduct a survey to buttress its likelihood of confusion claim. Neither party is obligated, in a proceeding before the Board, to spend the effort and expense to obtain such evidence."); *Hilson Research Inc. v. Soc'y for Human Res. Mgmt.*, 27 U.S.P.Q.2d 1423, 1435-36 (T.T.A.B. 1993) ("[t]he Board, although receptive to surveys, does not require them"). Several of our sister circuits have also held that survey evidence is not required to show a likelihood of confusion. *See, e.g.*, *Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc.*, 87 F.3d 654, 661 (4th Cir. 1996) ("surveys are not required to prove likelihood of confusion," quoting *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1249 (8th Cir. 1990)); *Charles Jacquin et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 476 (3d Cir. 1990) ("[W]e have not yet held that a consumer survey is mandatory to establish likelihood of confusion in a Lanham Act case and do not so hold in this case."); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 32

n.9 (1st Cir. 1989); *see generally McCarthy on Trademarks and Unfair Competition*, §§ 32:194-32:196.

We do not infer from Nestle's failure to provide survey evidence that such evidence would be harmful, especially when there is ample evidence demonstrating likelihood of confusion. While there may be cases in which the evidence of likelihood of confusion is not strong enough to support a finding to that effect in the absence of survey evidence, this is not such a case. In light of the identity of the goods, the similarity in the channels of trade and types of consumers, and the similarity of the BEGGIN' STRIPS and WAGGIN' STRIPS marks themselves, the Board's finding of a likelihood of confusion is supported by substantial evidence, and we therefore uphold it.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

(Opposition No. 91163853)

**MIDWESTERN PET FOODS, INC.,**
*Appellant,*

**v.**

**SOCIETE DES PRODUITS NESTLE S.A.,**
*Appellee.*

---

2011-1482

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board.

---

DYK, *Circuit Judge*, concurring in part and dissenting in part.

Although I agree with the majority's resolution of the likelihood of confusion issue on this record, I disagree with the majority's approval of the flawed process by which the Trademark Trial and Appeal Board ("Board") reached its decision. The majority's holdings that Nestle had no duty to produce the evidence on which it intended to rely during discovery, and that Midwestern's failure to file a motion to compel barred it from objecting to the admission of that evidence are incorrect and conflict with the advisory committee notes and with decisions interpreting the Federal Rules of Civil Procedure, which have

been adopted for Board proceedings. I respectfully dissent from part II of the majority's opinion.

During discovery in this case, Midwestern requested that Nestle produce a broad range of documents, including "[a]ll documents . . . which [Nestle] may rely upon to support its claims or defenses in connection with the [] proceeding."[1] J.A. 1198. On December 16, 2005, Nestle responded to Midwestern's discovery request, refusing to produce the documents and objecting as follows:

> [Nestle] objects to this request to the extent it seeks information and/or documents which are proprietary and confidential prior to entry of a suitable protective order. [Nestle] objects to this request to the extent it seeks information and/or documents which are protected by the attorney client privilege and/or work product doctrine. [Nestle] objects to the request as overbroad and unduly burdensome. . . . [Nestle] further objects to the request to the extent it seeks information and/or documents which are inconsistent with the holding of *Charrette Corp. v. Bowater Communication Papers, Inc.*, 13 USPQ 2d 2040 (TTAB 1989).

J.A. 1198-99.

I

Relying on *Charrette Corp. v. Bowater Communication Papers Inc.*, 13 U.S.P.Q.2d 2040 (T.T.A.B. 1989), and its

---

[1] Midwestern also requested production of documents relating to advertisement, promotion, sale, and marketing of products bearing Nestle's BEGGIN' STRIPS mark, to which the withheld documents were also likely responsive. *See* J.A. 1191-96 (interrogatory requests 6, 7, 8, 11 and 12).

3

progeny, the majority holds that in Board proceedings there is no obligation to specify the documents on which a party intends to rely prior to trial, Majority Op. at 5. However, in 1972, the Federal Rules of Civil Procedure (with exceptions not relevant here) were adopted to govern discovery in opposition proceedings before the Board. *See* Trademark Inter Partes Procedure, 37 Fed. Reg. 7605, 7605-06 (Apr. 18, 1972) (codified at 37 C.F.R. § 2.120). The Federal Rules of Civil Procedure were again adopted in 1998, though exempting Board proceedings from the automatic disclosure requirements of Rule 26(a)(1), which had been added to the federal rules in 1993. *See* Miscellaneous Changes to Trademark Trial and Appeal Board Rules, 63 Fed. Reg. 48,081, 48,098 (Sept. 9, 1998).

The central purpose of the federal discovery rules is to avoid surprise at trial. Those rules are designed to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). Under the federal rules, it has always been permissible to request the production of documents that a party intends to rely upon during trial. *See* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2001 (3d ed. 2011) (noting that one of the primary purposes of discovery was "[t]o secure information about the existence of evidence that may be used at the trial and to ascertain how and from whom it may be procured"). Indeed such requests have been routine. In my view, *Charrette* and its progeny plainly conflict with the central purpose of the Federal Rules of Civil Procedure governing discovery (applicable to Board proceedings pursuant to 37 C.F.R. § 2.120), and it is

telling that the Board here did not rely on *Charrette* to justify its evidentiary rulings in this case.

To be sure, prior to 2007, "[t]he provisions of the Federal Rules of Civil Procedure relating to automatic disclosure . . . [were] not applicable to Board proceedings." Miscellaneous Changes to Trademark Trial and Appeal Board Rules, 63 Fed. Reg. at 48,098. Under Federal Rule of Civil Procedure 26(a), parties are required to provide "*without awaiting a discovery request*," *inter alia*, "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . . [and] a copy . . . of *all documents*, electronically stored information, and tangible things that the disclosing party . . . *may use to support its claims or defenses.*" Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).

In 2007, the Board adopted the automatic disclosure requirement, concluding that doing so "will promote more efficient discovery and trial, reduce incidents of unfair surprise, and increase the likelihood of fair disposition of the parties' claims and defenses." Miscellaneous Changes to Trademark Trial and Appeal Board Rules, 72 Fed. Reg. 42,242, 42,244 (Aug. 1, 2007). As the majority points out, the 2007 amendment does not apply here because this case was filed in 2005, before the effective date of the amendment. But the fact that the Board had not yet adopted the automatic disclosure requirement at the time this case was filed does nothing to undermine the fact that a party is required, under the pre-2007 document production provisions, to produce the documents on which it intends to rely if so requested during discovery. The 2007 amendment does no more than emphasize the importance of avoiding surprise in Board proceedings by requiring parties to automatically produce the documents

5

on which they intend to rely "without awaiting a discovery request."

## II

The sole ground for the Board's decision refusing to sanction Nestle for failing to supplement its response to Midwestern's discovery requests was that Midwestern, "having failed to [move to compel], ha[d] waived its right to object to such testimony and evidence on the ground that it was not produced during discovery." J.A. 15. The majority approves this rationale, holding that "in view of Midwestern's failure to test the sufficiency of Nestle's objections to the discovery requests by moving to compel the production of the requested materials, . . . the Board did not abuse its discretion by refusing to strike Nestle's evidence." Majority Op. at 8-9. While both the federal rules (before the automatic disclosure requirement)[2] and the Board's own rules[3] required a motion to compel as a

---

[2] *See* Fed. R. Civ. P. 37(a)(3)(B) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection . . . if . . . a party *fails to respond* that inspection will be permitted--or fails to permit inspection--as requested under Rule 34." (emphasis added)); Fed. R. Civ. P. 37(b)(2) ("If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders.")

[3] *See* Trademark Inter Partes Procedure, 37 Fed. Reg. at 7607 ("If any party . . . fails or refuses to comply with a request to produce and permit the inspection and copying of designated things, the party seeking discovery may apply to the [Board] for an order compelling discovery. If a party . . . fails to obey an order to provide or permit discovery, the [Board] may [issue sanctions]."); *see also* Miscellaneous Changes to Trademark Trial and Appeal Board Rules, 63 Fed. Reg. at 48,098 ("If a party fails to comply with an order of the [Board] relating to discovery, . . . the Board may make any appropriate order,

prerequisite for sanctions for failure to comply with an initial discovery request, there is no such obligation for failure to supplement responses to discovery requests under Federal Rule of Civil Procedure 26(e).

Rule 26(e) is applicable to the proceeding in this case pursuant to 37 C.F.R. § 2.120. *See* Trademark Trial and Appeal Board Manual of Procedure ("TBMP") § 408.03 (3d ed. 2011) ("The duty to supplement disclosures and discovery responses in proceedings before the Board is governed by Fed. R. Civ. P. 26(e)(1) and (2). Under that rule, a party that . . . has responded to a request for discovery with a response is under a duty to supplement or correct the response in a timely manner . . . ."). Rule 26(e) requires timely supplementation without a motion. It provides that "[a] party who has . . . responded to an interrogatory, request for production, or request for admission [] must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Other circuits have repeatedly held that "Rule 26 imposes no requirement, express or implied, that a motion to compel precede a court's imposition of a sanction . . . for failure to supplement [discovery] responses." *Alldread v. City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993).[4]  The Board, in adopting the federal

---

including any of the orders provided in Rule 37(b)(2) of the Federal Rules of Civil Procedure . . . .").

[4]   *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 344 (6th Cir. 2002) ("[T]he district court was incorrect that it lacked the authority [under Rule 37(c)] to sanction defendants in the absence of a court order."); *Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir. 1992) ("While Fed.R.Civ.P. 37(b) requires that a court order must be in

rules, recognized that it was to be "guided by court decisions interpreting these rules." Miscellaneous Changes to Trademark Trial and Appeal Board Rules, 63 Fed. Reg. at 48,084.

The majority relies on TBMP § 523.04 which states that where a party "fails to file a motion to challenge the sufficiency of the response [to its discovery request], it may not thereafter be heard to complain about the sufficiency thereof." It is far from clear whether this provision was designed to deal with the supplementation requirement, or whether it was limited to deal with the failure to provide initial responses. In any event, unlike the regulations, this section of the TBMP does not have the force and effect of law. *See In re Pennington Seed, Inc.*, 466 F.3d 1053, 1059 (Fed. Cir. 2006) (holding that the Trademark Manual of Examining Procedure ("TMEP") "does not have the force and effect of law"). In the past, we have declined to follow provisions of the TMEP where we conclude that they are incorrect. *See, e.g.*, *In re Sones*, 590 F.3d 1282, 1288 (Fed. Cir. 2009). Even assuming we owed some deference to the Board's interpretation of an ambiguous rule, *see In re Garner*, 508 F.3d 1376, 1378-79 (Fed. Cir. 2007), here at the time that Rule 26(e), governing supplementation of discovery responses, was adopted in 1972 by the Board, it was quite clear that sanctions could be imposed without a motion to compel a court

---

effect, and then violated, as a prerequisite for the imposition of sanctions thereunder, no such requirement exists under Rule 26(e). The rule itself furnishes fair warning. Thus, when Rule 26(e) is flouted, district courts possess the power to impose sanctions without first issuing a firm discovery deadline or an admonitory order." (internal citations omitted)); *see also* 8A Wright et al., *supra*, § 2050 ("[T]here is no need for an order compelling discovery as a prerequisite to imposition of sanctions for failure to supplement as required by Rule 26(e).").

order. As the advisory committee note to the 1970 amendment of Rule 26(e) stated, "[t]he duty [to supplement] will normally be enforced . . . through sanctions imposed by the trial court, including exclusion of evidence, continuance, or other action, as the court may deem appropriate." Fed. R. Civ. P. 26 advisory committee note (1970 amendment). When the federal rules were again adopted by the Board in 1998, judicial decisions (discussed above) had confirmed that a motion to compel was not required to impose sanctions for failure to comply with Rule 26(e).

"[W]henever [one jurisdiction] . . . has borrowed from the statutes of a [second jurisdiction] provisions which had received in that [second jurisdiction] a known and settled construction . . . , that construction must be deemed to have been adopted by [the first jurisdiction] together with the text which it expounded, and the provisions must be construed as they were understood at the time in the [second jurisdiction]." *Shannon v. United States*, 512 U.S. 573, 581 (1994) (quoting *Capital Transaction Co. v. Hof*, 174 U.S. 1, 36 (1899)). Having adopted Rule 26(e), the Board was obliged to adhere to the interpretation given to the rule in the advisory committee note. The TBMP interpretation is contrary to the established view at the time that the Board adopted the federal rules in 1972 that a motion to compel is not required and that sanctions may be imposed for non-compliance. The TBMP interpretation is also contrary to federal court decisions existing at the time of the 1998 re-adoption of Rule 26(e). In my view, the majority's treatment of this issue is also inconsistent with basic principles of fundamental fairness in Board proceedings and invites the making of frivolous objections.

On the facts of this case, Nestle plainly did not comply with its supplementation obligations under the federal

9

rules. The objections here, whatever their initial validity, were improper once Nestle determined to use the documents at the hearing. A protective order was issued on March 14, 2006, thus rendering moot Nestle's confidentiality objection. Nestle's objections based on privilege and overbreadth became frivolous when Nestle decided to use documents responsive to Midwestern's production requests at the hearing. Nor could Nestle wait until the hearing to produce the documents. The federal rules are "not an invitation to hold back material items and disclose them at the last moment." 8A Wright et al., *supra*, § 2049.1. Sanctions for the failure to make supplemental discovery under such circumstances are routine. *See Thibeault v. Square D Co.*, 960 F.2d 239, 245 (1st Cir. 1992) ("[A] district court confronted with a violation of Rule 26(e) can fashion an appropriate sanction from a wide range of options. Preclusion is one of these options.").

Accordingly, because Midwestern's request that Nestle produce the documents on which it intended to rely was proper, and because Nestle had an affirmative obligation under Rule 26(e) to supplement its responses to Midwestern's discovery requests even in the absence of Midwestern having moved to compel such responses, I respectfully dissent. I would remand this case to the Board for consideration of whether the exclusion of Nestle's evidence was an appropriate discovery sanction or whether some other sanction would have been appropriate. *See* Fed. R. Civ. P. 37(c).