**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BILLFLOAT INC., DBA SmartBiz Loans, a Delaware corporation, | Nos. 23-15405 23-15470 |
| *Plaintiff-Appellant / Cross-Appellee*, | D.C. No.3:20-cv-09325-EMC |
| v. | |
| COLLINS CASH INC., DBA Smart Business Funding, a New York corporation; ABRAHAM COHEN, | OPINION |
| *Defendants-Appellees / Cross-Appellants*. | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted March 11, 2024
San Francisco, California

Filed July 1, 2024

Before: Sidney R. Thomas, M. Margaret McKeown, and
Morgan Christen, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Lanham Act

The panel affirmed (1) the district court's judgment, after a jury trial, in favor of the defendants in an action under the Lanham Act and (2) the district court's order partially denying defendants' motion for attorneys' fees.

BillFloat, Inc., the user of the "SmartBiz" trademark, alleged infringement by Collins Cash, Inc., the user of the "Smart Business Funding" mark and BillFloat's former business partner.

The panel held that the district court did not abuse its discretion in admitting Collins Cash's likelihood-of-confusion survey as expert evidence under Federal Rule of Evidence 702 because issues of survey design did not render the survey unreliable and thus inadmissible.

The district court also did not abuse its discretion in declining to instruct the jury that it should not draw any inferences from BillFloat's lack of a similar survey.

On cross-appeal, the panel held that the district court did not abuse its discretion in denying Collins Cash's motion for attorneys' fees for the trademark infringement claim, either under the parties' partnership agreement or under the Lanham Act. The panel concluded that the trademark claim did not relate to the partnership agreement, and the case was not "exceptional" under the Lanham Act.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Jesse A. Salen (argued) and Martin R. Bader, Sheppard Mullin Richter & Hampton LLP, San Diego, California; Todd E. Lundell, Sheppard Mullin Richter & Hampton LLP, Costa Mesa, California; Karl S. Kronenberger, Kronenberger Rosenfeld LLP, San Francisco, California; for Plaintiff-Appellant.

Gordon E. Gray, III (argued), Joseph A. Mandour, III, and Ben Lila, Mandour & Associates APC, Los Angeles, California, for Defendants-Appellees.

## OPINION

McKEOWN, Circuit Judge:

This cross-appeal arises from a trademark infringement suit brought by BillFloat, the user of the "SmartBiz" mark, against Collins Cash, the user of the "Smart Business Funding" mark. After a four-day trial, a jury found no likelihood of confusion between the marks. BillFloat appeals the district court's decision to admit Collins Cash's likelihood-of-confusion survey, and the district court's refusal to instruct the jury that it should not draw any inferences from BillFloat's lack of a similar survey. Collins Cash appeals the district court's denial of fees and costs for the trademark infringement claim, and denial of costs for the contract claim, under both the parties' partnership agreement and the Lanham Act. We affirm.

## I.  BACKGROUND

BillFloat and Collins Cash are both providers of small business financing, though they operate with slightly different business models.  BillFloat provides Small Business Administration and other loans to small businesses. It generates business primarily from referrals to and from its largest partners, typically financial institutions.  Collins Cash is a much smaller company that primarily deals in merchant cash advances, with ninety percent of its business done through broker referrals.  In 2013, BillFloat began using the "SmartBiz" mark on its website and in other materials and registered the mark in 2014.  In late 2014, Collins Cash began using the "Smart Business Funding" mark, though it did not file an application to register that mark until 2020.

In 2018, BillFloat and Collins Cash entered into a partnership agreement.  Under the agreement, Collins Cash would introduce BillFloat's product, SmartBiz, to current and prospective customers and refer them to BillFloat for small-business loans; BillFloat would then take over and help the customer apply for a loan.  Upon approval of the loan, BillFloat would pay Collins Cash a small percentage of the loan principal as a referral fee.  The parties also agreed that "[i]f either Party employs attorneys to enforce any right arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys' fees."

In 2020, after learning of Collins Cash's use of the "Smart Business Funding" mark, BillFloat sent Collins Cash a series of cease-and-desist letters, culminating in this suit. BillFloat brought claims for federal and state trademark infringement, breach of contract, unfair competition, and unlawful business practices.  After the district court granted

summary judgment to Collins Cash on the breach-of-contract claim, the parties proceeded to trial on the trademark infringement claim.[1]

In preparation for trial, Collins Cash engaged an expert, Mark Keegan, to conduct a survey of 240 respondents in an effort to measure the likelihood of confusion between the marks. In the survey, Keegan asked a number of questions to whittle the respondents down to likely prospective purchasers of small business loans, and then presented them with BillFloat's website, including its SmartBiz mark. Keegan then presented the respondents with an array of other websites, one of which was Collins Cash's website displaying its "Smart Business Funding" mark, and three websites for other small business loan providers to serve as controls. Finally, respondents were asked whether each of the four webpages shown in the array were the same company as, affiliated with, or sponsored or approved by BillFloat.

BillFloat sought to exclude Keegan and his survey from trial, arguing that various errors made his survey unreliable and thus inadmissible. The district court denied the motion to exclude and admitted Keegan's testimony and the survey at trial. The district court also admitted testimony from BillFloat's expert, Melissa Pittaoulis, to explain the errors in Keegan's survey. Both experts were extensively cross-examined on their qualifications and the claimed shortcomings of Collins Cash's survey. After a four-day trial, the jury found that BillFloat had not established trademark infringement by a preponderance of the evidence.

---

[1] BillFloat voluntarily dismissed the other remaining claims before trial.

Post-trial, BillFloat moved for judgment as a matter of law and for a new trial, and Collins Cash filed a motion for attorneys' fees and non-taxable costs. The district court denied BillFloat's motion and awarded Collins Cash attorneys' fees under the partnership agreement for the breach of contract claim, but declined to grant attorneys' fees for the trademark infringement claim, and denied non-taxable costs for both claims.

## II. BILLFLOAT'S APPEAL

Under Federal Rule of Evidence 702, expert testimony must be both relevant and reliable to be admissible. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). With respect to survey evidence, "[w]e have long held that [it] should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (third and fourth alteration in original) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)). "'[T]echnical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Id.* (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988)). In sum, "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001). We review for abuse of discretion the district court's decision to admit the expert testimony. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021).

Collins Cash's expert, Mark Keegan, has two decades of experience designing and executing over 1,000 consumer surveys, has testified as an expert at five federal trials (including this one), and has been deposed as an expert in thirty cases. The survey he designed in this case follows what is known as the "Squirt" survey format, an accepted survey methodology in cases where likelihood of confusion between lesser-known marks is at issue. *See* J. Thomas McCarthy, Trademarks & Unfair Competition § 32:174.50 (5th ed. 2024). In short, the Squirt method involves presenting a survey respondent with the two conflicting marks without assuming that the respondent is familiar with either mark, and asks the respondent whether they think the marks are in some way related to each other or come from the same or different sources. *Id.*

BillFloat points out various issues with the survey, such as the over- and under-inclusiveness of the respondent universe, Keegan's failure to include a separate control group, and the control stimuli Keegan picked, which were real webpages for other small-business loan companies.[2] These challenges to methodology and design are precisely the kind of claimed deficiencies that go to the weight of the evidence, not its admissibility. *See Fortune Dynamic*, 618 F.3d at 1037–38. The district court did not abuse its discretion when it concluded that these "follow-on issues of . . . survey design" did not render the survey unreliable and

---

[2] The parties also dispute whether BillFloat's characterization of Keegan's survey as "deceptive" is "frivolous and sanctionable per" Federal Rule of Appellate Procedure 38. Although we do not agree with BillFloat that Keegan's survey is inadmissible, BillFloat's arguments on appeal are neither frivolous nor sanctionable.

thus inadmissible.[3]  *Clicks Billiards*, 251 F.3d at 1263. BillFloat was welcome to argue—and did argue through its expert at trial—that Keegan's survey should be accorded minimal weight due to these shortcomings.

Similarly, the district court did not abuse its discretion when it declined to give BillFloat's requested jury instruction. *See Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020). BillFloat requested the following instruction:

> You have received market survey evidence from Defendants in this case.  However, you should not draw any inference about the existence or absence of consumer confusion from the fact that Plaintiff did not also offer market survey evidence.

In support, BillFloat cites three cases that stand for the routine proposition that a plaintiff should not be automatically penalized for failing to present evidence that is not required. *See Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1054 (Fed. Cir. 2012) (declining to "infer from Nestle's failure to provide

---

[3] Additionally, BillFloat argues in its reply brief that the district court per se abused its discretion because it failed to explicitly find that Keegan's survey was reliable.  Because BillFloat failed to "specifically and distinctly argue[]" this point in its opening brief, it is waived.  *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986).  And in any case, because Keegan's survey meets Rule 702's reliability standard as interpreted by this court and BillFloat was not prejudiced, any such error would be harmless.  *See, e.g.*, *United States v. Holguin*, 51 F.4th 841, 853–62 (9th Cir. 2022) (holding that the district court erred in failing to make an explicit reliability finding but concluding that the error was harmless).

survey evidence that such evidence would be harmful"); *Swagway, LLC v. Int'l Trade Comm'n*, 934 F.3d 1332, 1340 (Fed. Cir. 2019) (declining to draw an "adverse inference" from Segway's failure to conduct a survey); *San Diego Comic Convention v. Dan Farr Prods.*, 336 F. Supp. 3d 1172, 1185 (S.D. Cal. 2018) (rejecting argument that the plaintiff's failure to conduct a survey "demonstrate[d] that confusion is not likely"). But BillFloat's contention—that the jury *was not permitted to draw any inference at all* from the absence of survey evidence proffered by BillFloat—goes too far. If nothing else, the jury was free use its common sense and experience when weighing the evidence offered by the parties, including the absence of a survey supporting BillFloat's position. The district court did not abuse its discretion in declining to give the requested instruction.

Finally, even if we were to countenance BillFloat's arguments that the district court erred by admitting Keegan's survey or omitting its requested instruction, there was no prejudicial error that warrants reversal. *See M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005). BillFloat presented little evidence that its "SmartBiz" mark was particularly strong in its industry. The companies provide slightly different services and rely on different referral partners, many of which tend to be more sophisticated than the average consumer and thus less likely to confuse the two companies. BillFloat's proffered evidence of actual confusion—six isolated emails in a universe of Collins Cash's 40,000-50,000 emails from potential customers in a year—was minimal. Even putting aside Collins Cash's survey and BillFloat's decision not to proffer its own survey, a jury could easily have concluded based on the other evidence at trial that there was no likelihood of confusion between the two marks.

### III.   COLLINS CASH'S APPEAL

Collins Cash contends that the district court erred in denying its motion for attorneys' fees for the trademark infringement claim, either under the parties' partnership agreement or the Lanham Act.  We review this issue for abuse of discretion.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 898–99 (9th Cir. 2006) (state law); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam) (Lanham Act).

The parties' partnership agreement contains the following provision regarding governing law and attorneys' fees:

> The Parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California . . . . If either Party employs attorneys to enforce any right arising out of or relating to this Agreement, the prevailing Party shall be entitled to recover reasonable attorneys' fees.

Collins Cash argues that BillFloat "admit[ted]" that its trademark infringement claim "relat[es] to" the partnership agreement because BillFloat also brought a claim for breach of contract in this case.  But as the district court noted in its order granting summary judgment on the contract claim, the contract concerned only uses of BillFloat's "SmartBiz" mark by Collins Cash, not any other purportedly infringing marks. Thus, the complaint does not constitute an "admission" that BillFloat's trademark infringement claim is "related to" its breach of contract claim.

Nor does the trademark infringement claim "arise out of" or "relate to" the contract under California law. A suit arises out of an agreement if the claims at issue "arose from the underlying transactional relationship between the parties, as memorialized by the[ir] . . . [a]greement." *Xuereb v. Marcus & Millichap, Inc.*, 5 Cal. Rptr. 2d 154, 159 (Cal. Ct. App. 1992). If a claim is "quite independent of the basic contractual arrangement," then it does not arise out of the contract. *Id.* (quoting *Malibou Lake Mountain Club, Ltd. v. Smith*, 95 Cal. Rptr. 553, 556 (Cal. Ct. App. 1971)). Similarly, "[c]onsistent with the proposition that 'relating to' acquires meaning from the subjects being related, the phrase normally encompasses extracontractual claims only 'so long as they have their roots in the relationship between the parties which was created by the contract.'" *Vaughn v. Tesla, Inc.*, 303 Cal. Rptr. 3d 457, 466 (Cal. Ct. App. 2023) (quoting *Berman v. Dean Witter & Co., Inc.*, 119 Cal. Rptr. 130, 133 (Cal Ct. App. 1975)). The trademark infringement claim is totally independent of the parties' partnership agreement. As the district court noted, the claimed trademark infringement arose at least four years earlier, required different proof, and did not share underlying facts or common issues. As such, the district court did not abuse its discretion when it denied Collins Cash attorneys' fees for the trademark infringement claim under the parties' partnership agreement.[4]

---

[4] Even if Collins Cash relies on Cal. Civ. Code § 1717, which awards attorneys' fees to the prevailing party in a contract action where the contract provides for them, it fails to persuade. "When a party obtains a simple, unqualified victory by completely prevailing on . . . *all contract claims* . . . section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of *those claims*." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999) (emphasis

Nor did the court abuse its discretion in denying fees under the Lanham Act. The Lanham Act allows an award of attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). The Supreme Court has explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

Collins Cash cites a litany of complaints about BillFloat's "meritless" claims and its "unreasonable" litigation conduct, none of which convince us that the district court erred here. While the *Sleekcraft* infringement factors largely came out in Collins Cash's favor, the claim was hardly "meritless," and a positive result does not transform a trademark claim into an "exceptional case." And while the district court granted summary judgment to Collins Cash on BillFloat's breach of contract claim, a dismissal of a single claim at summary judgment (particularly where another claim goes to trial) does not render a case exceptional. *See Octane Fitness*, 572 U.S. at 553–54 (defining "exceptional" as "uncommon," "rare," or "not ordinary"). Collins Cash also argues that BillFloat's unfair competition claim was "invalid as a matter of law," yet Collins Cash did not move to dismiss that claim; instead, BillFloat voluntarily dismissed the claim before trial.

Finally, Collins Cash's complaints about BillFloat's litigation conduct—its failure to offer evidence of a pre-

---

added). BillFloat's trademark infringement claim was not a contract claim, and thus Section 1717 does not entitle Collins Cash to fees incurred as to that claim.

litigation investigation, a six-month delay between learning of the alleged infringement and sending the first cease-and-desist letter, producing 98,000 documents without an index, and copious objections during the deposition of BillFloat's CEO—do not rise to the kind of egregious litigation tactics that make a case "exceptional" under the Lanham Act. *See, e.g.*, *Nutrition Distrib. LLC v. IronMag Labs, LLC*, 978 F.3d 1068, 1081 (9th Cir. 2020) (holding no abuse of discretion in denying fees in part because the movant failed to tender "proof that [the infringer] had engaged in litigation misconduct or violated the district court's injunction"); *cf. Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1223–24 (9th Cir. 2023) (holding that the district court did not abuse its discretion by concluding that "willful and brazen infringement," including "an attempt to circumvent the full force of [an] injunction," "constitute[d] an exceptional case"), *cert. denied*, 144 S. Ct. 550 (2024).[5]

**AFFIRMED.**

---

[5] Because the district court did not err in denying fees for the trademark infringement claim, it also did not err in declining to award non-taxable costs under the Lanham Act. As for the costs incurred defending the contract claim, the parties' agreement references only fees, not costs. Accordingly, the district court did not err in denying costs for the contract claim.