THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing: January 18, 2022                    Mailed: March 29, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE
____

Trademark Trial and Appeal Board
____

*Illyrian Import, Inc.*
*v.*
*ADOL Sh.p.k.*
____

Opposition No. 91234244
Opposition No. 91234345
____

Bruce A. Truex and Roy E. Cole of Secret Wardle,
    for Illyrian Import, Inc.

Roger Gilcrest of Ice Miller LLP,
    for ADOL Sh.p.k.

____

Before Bergsman, Lynch, and Larkin,
    Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

These consolidated proceedings involve two companies claiming rights in the same

marks for Albanian brandy.

ADOL Sh.p.k. ("Applicant") seeks registration on the Principal Register of the

marks SKËNDERBEU (in standard characters) and GJERGJ KASTRIOTI

SKËNDERBEU (stylized), reproduced below, both for "beverages from wine distillates, namely, brandy and grape brandy," in International Class 33.[1]

Applicant's description of the stylized mark reads as follows:

> The mark consists of the term "GJERGJ KASTRIOTI SKËNDERBEU" in an old script font style.

Illyrian Import, Inc. ("Opposer") filed a Notice of Opposition against the registration of Applicant's marks under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). Opposer alleges that it is "the exclusive authorized distributor and brand agent in the United States of the company 'Kantina e Pijeve Gjergj Kastrioti Skenderbeu sha,'" ("GKS") a company that has continuously sold GJERGJ KASTRIOTI SKËNDERBEU and SKËNDERBEU brandy in the United States since June 10, 2002,[2] and that Applicant's use of the marks SKËNDERBEU and GJERGJ KASTRIOTI SKËNDERBEU (stylized) for brandy is likely to cause confusion.

---

[1] Application Serial No. 87132073 (GJERGJ KASTRIOTI SKËNDERBEU (stylized) - Opposition No. 91243244) and Serial No. 87132060 (SKËNDERBEU - Opposition No. 91234345) were filed August 9, 2016, under Section 1(a) of the Trademark Act, 15 U.S.C. § 1052(a), based upon Applicant's claim of first use anywhere and use in commerce since at least as early as June 1, 2004.

[2] Notices of Opposition for each proceeding ¶¶ 7 and 11 (1 TTABVUE 5-6 and 8-9).

Opposer also alleges that "Applicant has made a false or fraudulent declaration or representation of its ownership of the rights to the [marks]."[3] Opposer characterizes the "fraudulent" activity in connection with the declaration as follows:

● "The Applicant has been and still is fully aware that alcoholic products bearing the sign 'Gjergj Kastrioti Skënderbeu' have been successfully sold, traded and offered for sale for almost 15 years by the company [GKS] before the Applicant fraudulently submitted its application on August 9, 2016.";[4]

● "[T]he Applicant's brand label in its application for GJERGJ KASTRIOTI SKËNDERBEU [and SKËNDERBEU] mark[s] demonstrating alleged use in commerce is fraudulent because the label has the protected 'cognac' name on it, which

---

[3] Notices of Opposition ¶ 11(d) (1 TTABVUE 11). In its brief Opposer identifies the fraud issue as follows:

> Whether applicant's applications to register [the marks] should be denied registration as a consequence of applicant knowingly making false, material misrepresentations of fact in the applications with the intent to deceive the USPTO, rising to the level of fraud.

Opposer's Brief, p. 10 (93 TTABVUE 11).

In its ESTTA cover sheet, Opposer also pleaded: Applicant did not make use of the marks in commerce prior to filing the applications, dilution by blurring and tarnishment, "geographic indication which, if used on or in connection with wine or spirits, identifies a place other than the origin of the goods," and "false designation or origin, false or misleading description of fact, or false or misleading representation of fact." Inasmuch as Opposer, in its brief, identifies only likelihood of confusion and fraud as the issues before us, we deem the other purported claims waived. *Swatch AG (Swatch SA) (Swatch Ltd.) v. M.Z. Berger & Co.*, 108 USPQ2d 1463, 1465 n.3 (TTAB 2013) (pleaded claims not argued in its brief deemed waived), *aff'd*, 787 F.3d 1368, 114 USPQ2d 1892 (Fed. Cir. 2015); *Alcatraz Media, Inc. v. Chesapeake Marine Tours, Inc.*, 107 USPQ2d 1750, 1753 (TTAB 2013) (petitioner's pleaded descriptiveness and geographical descriptiveness claims not argued in brief deemed waived), *aff'd*, 565 F. App'x 900 (Fed. Cir. 2014) (mem.).

[4] Notices of Opposition ¶ 11(c) (1 TTABVUE 10).

is prohibited by the 1994 Distilled Spirits Agreement and 27 C.F.R. § 5.22(d)(2).";[5] and

● "Pursuant to 15 U.S.C. § 1120, Applicant has made a false or fraudulent declaration or representation of its ownership of the rights to the GJERGJ KASTRIOTI SKËNDERBEU [and SKËNDERBEU] mark[s]. The company [GKS] bears the mark[s] in its company's name and is the first to use and has the exclusive right to manufacture and distribute products that bear the name GJERGJ KASTRIOTI SKËNDERBEU [and SKËNDERBEU]."[6]

Applicant, in its Answers, denied the salient allegations of the Notices of Opposition. Applicant also pleaded the following affirmative defenses:

● The prior registration defense or *Morehouse* defense[7] based on Applicant's ownership of Registration No. 4877418 for the mark GJERGJ KASTRIOTI SKENDERBEU (in standard characters) for "brandy"[8] and Registration No. 5185075 for the mark SKËNDERBEU (stylized), reproduced below, for "beverages from wine distillates, namely, brandy and grape brandy."[9]



---

[5] *Id.*

[6] Notices of Opposition ¶ 11(d) (1 TTABVUE 11).

[7] Affirmative Defenses ¶¶ 5-8 in each proceeding (4 TTABVUE 7-8). *See Morehouse Mfg. Corp. v. Strickland & Co.*, 407 F.2d 881, 160 USPQ 715 (CCPA 1969).

[8] Registered December 29, 2015; Sections 8 and 15 declarations accepted and acknowledged.

[9] Registered April 18, 2017.

● Opposer acted with unclean hands by knowingly making materially false allegations in the Notices of Opposition;[10]

● Equitable estoppel bars Opposer's claims because Opposer acted as Applicant's exclusive distributor of SKËNDERBEU and GJERGJ KASTRIOTI SKËNDERBEU (stylized) brandy and registered those brands in that capacity as "the genuine and original products" with LARA in Michigan;[11]

● "Opposer acquiesced for years in Applicant's use of the subject [marks] for Applicant's brandy, and never objected to such use and never questioned Applicant's ownership of the [marks], or Applicant's right to use the subject [marks]."[12]

Applicant's purported affirmative defenses based on Opposer's fraudulent conduct prosecuting the oppositions, bad faith prosecuting the oppositions, and prior rights to the marks are amplifications of Applicant's defense to Opposer's claims, not affirmative defenses. Although it is permissible to amplify a denial of, for example, an allegation of a likelihood of confusion in a pleading, *see Morgan Creek Prods., Inc. v. Foria Int'l, Inc.*, 91 USPQ2d 1134, 1135-36 (TTAB 2009), "such amplification is not, and should not be pled as, a separate 'defense,' and we do not treat it as such here." *Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241, at *4 n. 5 (TTAB 2021).

---

[10] Affirmative Defenses ¶¶ 20-25 (4 TTABVUE 11-12).

[11] Affirmative Defenses ¶¶ 27-33 (4 TTABVUE 12-13). LARA is the Michigan Department of Licensing and Regulatory Affairs.

[12] Affirmative Defenses ¶ 36 (4 TTABVUE 13).

The Board consolidated proceedings in its July 18, 2017 order.[13] We refer to the record in Opposition No. 91234244 unless otherwise indicated.

Citations to the record and briefs refer to TTABVUE, the Board's online docket system. *See, e.g.*, *New Era Cap Co., Inc. v. Pro Era, LLC*, 2020 USPQ2d 10596, at *2 n.1 (TTAB 2020).

## I.    Evidentiary Issues

Before proceeding to the merits of these proceedings, we address an evidentiary matter.

### A.    Applicant's motion to strike the Jurgen Dashi rebuttal testimony declaration and exhibits.

Opposer introduced the rebuttal testimony declaration of Jurgen Dashi, the current Chief Executive Officer/Administrator of GKS, Opposer's supplier of brandy bearing the marks at issue, purportedly to rebut the testimony of Applicant's witnesses Stojce Josifovski, the President of Overseas International, Inc., the supplier's former importer, and Sokol Hatellari, Applicant's former Chief Executive Officer/Administrator.[14]

Applicant moved to strike the Dashi rebuttal testimony declaration on the grounds that Opposer did not disclose the identity of Mr. Dashi, nor the scope of his testimony in its initial disclosures, pretrial disclosures, or discovery responses.[15]

---

[13] 7 TTABVUE.

[14] 66 TTABVUE 3-5. The Administrator is similar to a Chief Executive Officer. Kushi Testimony Dep., p. 10 (36 TTABVUE 5).

[15] 70 TTABVUE 2-3.

Applicant asserts that because the only representative of GKS, whom Opposer identified was Helidon Kushi, its previous Administrator,

> Applicant was without a fair basis to inquire as to Opposer's communication with Mr. Dashi as was done with respect to Mr. Kushi, or obtain documents regarding Mr. Dashi whose identity was concealed throughout discovery.[16]

In addition, Applicant contends that Dashi Exhibits 1-21 consist of documents Applicant requested during discovery but Opposer never produced and, therefore, the Board should strike those documents.[17] "Opposer indicated that the produced documents were all Opposer had or promised to produce additional documents which never arrived."[18]

In opposition to Applicant's motion to strike, Opposer argues that it identified Mr. Dashi in its Rebuttal Disclosures,[19] citing Applicant's Exhibit E (Opposer's Rebuttal Disclosures).[20] In its Rebuttal Disclosures, Opposer identified Jurgen Dashi and the following subjects on which he expects to testify:

> (a) rebut the subject matter in the testimonial declaration of Sokol Hatellari submitted by Applicant with its notice of reliance filed with the Trademark Office before the Trademark Trial and Appeal Board on June 18, 2020;
>
> (b) rebut the subject matter in the testimonial declaration of Stojce (Steve) Josifovski submitted by Applicant with its

---

[16] 70 TTABVUE 4.

[17] 70 TTABVUE 11-12. Mr. Kushi, the former Administrator of GKS, testified that GKS provided Opposer with all the "legal documents" in its archives since the beginning of operations until the present. Kushi Testimony Dep., pp. 50-52 (52 TTABVUE 15).

[18] 70 TTABVUE 12.

[19] 78 TTABVUE 3.

[20] Applicant's Motion to Strike Exhibit E (70 TTABVUE 79-87).

notice of reliance filed with the Trademark Office before the Trademark Trial and Appeal Board on June 19, 2020;

(c) SKENDERBEU trademarks and design marks registered in Albania;

(d) registration of trademarks and design marks for Skenderbeu in the United States;

(e) the importation and sale of Skenderbeu in the United States;

(f) Kantina e Pijeve Gjergj Kastrioti Skenderbeu trademarks;

(g) Gjergj Kastrioti Skenderbeu Brandy design mark;

(h) U.S. label registrations for Kantina Skenderbeu;

(i) U.S. FDA registrations for alcoholic beverages in the name of Kantina e Pijeve Gjergj Kastrioti Skenderbeu (f/k/a Kantina e Veres);

(j) any and all trial exhibits filed with the Trademark Office before the Trademark Trial and Appeal Board with Applicant ADOL's Notices of Reliance during its trial period.

Types of documents that may be introduced as Exhibits during the testimony of Mr. Dashi:

(a) documents produced for Stojce Josifovski and/or Overseas International in this proceeding;

(b) documents produced by Sokol Hatellari and ADOL in this proceeding;

(c) the discovery deposition transcripts of witnesses testifying in this proceeding;

(d) documents showing the registration of the SKENDERBEU Marks in Albania;

(e) documents showing the registration of the SKENDERBEU Marks in the United States;

(g) documents showing the importation and/or sale of Skenderbeu in the United States from 1990 through the present.

(h) U.S. label registrations for Kantina Skenderbeu;

(i) U.S. FDA registrations for alcoholic beverages in the name of Kantina e Pijeve Gjergj Kastrioti Skenderbeu (f/k/a Kantina e Veres).[21]

Opposer explains that because Mr. Dashi did not become the Chief Executive Officer/Administrator for GKS until after the initial testimony period closed it was not necessary to disclose his identity in initial disclosures, pretrial disclosures, or discovery responses. Moreover, until Applicant presented its case, Opposer could not anticipate the need for Mr. Dashi's rebuttal.[22]

During a plaintiff's rebuttal testimony period, the plaintiff may introduce evidence and testimony to deny, explain or discredit facts and witnesses adduced by the defendant. Evidence is improper rebuttal, however, where it does not serve to do the above, but rather where it relates to a witness and facts that might appropriately have been introduced during the plaintiff's case-in-chief. *See Life Zone Inc. v. Middleman Grp. Inc.*, 87 USPQ2d 1953, 1958 (TTAB 2008); *Wet Seal Inc. v. FD Mgmt. Inc.*, 82 USPQ2d 1629, 1632 (TTAB 2007); *Carefirst of Md. Inc. v. FirstHealth of the Carolinas Inc.*, 77 USPQ2d 1492, 1498 (TTAB 2005), *aff'd*, 479 F.3d 825, 81 USPQ2d 1919 (Fed. Cir. 2007). We will consider the rebuttal testimony declaration of Jurgen Dashi only to the extent that it rebuts the testimony of Applicant's witnesses. We will

---

[21] 70 TTABVUE 84-86.

[22] 78 TTABVUE 4.

not consider the rebuttal testimony declaration of Jurgen Dashi with respect to any testimony that we consider properly to be part of Opposer's case-in-chief (e.g., first use of the marks at issue). Likewise, we will consider the exhibits attached to the Dashi rebuttal declaration only to the extent that they serve as rebuttal and not evidence that Opposer should have introduced as part of its case-in-chief.

While Applicant contends it requested those documents during discovery and Opposer did not produce them, Applicant did not identify specific documents and associate them with specific document requests. It is not enough that Applicant merely refers in a cursory manner to Opposer's claimed failure to comply with discovery requests and then leaves it to the Board to figure out which of the witness's documents should have been produced in response to specific document requests. *Cf. N.Y. Rehab. Care Mgmt., LLC v. NLRB*, 506 F.3d 1070, 1076 (D.C. Cir. 2007) ("It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work."); *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) (same); *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: 'Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.'").

In addition, if a party that served a request for discovery receives a response thereto that it believes to be inadequate, but fails to file a motion to challenge the

sufficiency of the response, it may not thereafter be heard to complain about the sufficiency thereof. *See Midwestern Pet Foods Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 103 USPQ2d 1435, 1439 (Fed. Cir. 2012) (Board did not abuse its discretion by refusing to strike plaintiff's evidence where defendant failed to follow up on plaintiff's offer to produce the evidence at a mutually agreeable time and place and in view of defendant's failure to file a motion to compel); *H.D. Lee Co. v. Maidenform Inc.*, 87 USPQ2d 1715, 1719 (TTAB 2008) (party that receives response it believes inadequate but fails to file a motion to test sufficiency of response, may not thereafter complain about its insufficiency).

In accordance with the preceding discussion, we grant Applicant's motion to the extent that we consider the rebuttal testimony declaration of Jurgen Dashi only to the extent that it rebuts the testimony of Applicant's witness and we otherwise deny the motion.

B.    Applicant's objection to the Helidon Kushi testimony deposition.

On May 29, 2019, Opposer noticed the deposition of Helidon Kushi, the former Administrator of GKS, Opposer's supplier of SKËNDERBEU and GJERGJ KASTRIOTI SKËNDERBE brandy, for June 6, 2019.[23] The deposition took place on that date.

---

[23] 38 TTABVUE.

At the beginning of the deposition, Applicant's counsel lodged an objection to the deposition, put a written objection on the record, and stated that he would cross-examine under protest.[24] However, Applicant did not renew the objection in its brief.

"[B]y failing to preserve the objection in its brief on the case, or in an appendix to the brief on the case or in a separate statement of objections filed with the brief on the case, a party may waive an objection that was seasonably raised at trial." TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 707.04 (2021) (citing *See Grote Indus., Inc. v. Truck-Lite Co.* 126 USPQ2d 1197, 1207 n.28 (TTAB 2018) (testimony objections waived when not asserted in or with opening brief), *civil action filed*, No. 1:18-cv-00599 (W.D.N.Y. May 24, 2018); *UVeritech, Inc. v. Amax Lighting, Inc.*, 115 USPQ2d 1242, 1244 n.3 (TTAB 2015) (various objections asserted during testimony, including that certain documents introduced at trial were not produced during discovery, which were not maintained in brief were deemed waived); *Gen. Mills Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1592 n.7 (TTAB 2011) (objection to testimony deemed waived because it was not maintained in brief), *judgment altered by agreement of the parties*, 110 USPQ2d 1679 (TTAB 2014) (non-precedential)).

Accordingly, Applicant waived its objection to the testimony in the Helidon Kushi deposition.

---

[24] Helidon Testimony Dep., p. 8 and Exhibit A (52 TTABVUE 4 and 85-100).

## II.   The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the files of Applicant's applications. The parties introduced the testimony and evidence listed below:

### A.   Opposer's testimony and evidence

1.   Testimony affidavit of Faiz Ayar, owner of Two Brothers Liquor & Food, Inc. in Hamtramck, Michigan;[25]

2.   Testimony affidavit of John Jonna, owner of Wine Depot Party Shop, Inc. in Warren, Michigan;[26]

3.   Testimony affidavit of Nazar Matti, owner of Bee Bee's, Inc., d/b/a Bee Bee's Liquor Wine Shop and Deli in Warren, Michigan;[27] and

4.   Testimony deposition of Helidon Kushi, Administrator of GKS.[28]

---

[25] 36 TTABVUE 2-3.

[26] 36 TTABVUE 4-5.

[27] 36 TTABVUE 6-7.

[28] 52 TTABVUE. GKS first employed Mr. Kushi in October 2010 as its Director of Marketing and Sales. In January 2016, Mr. Kushi became the company's Administrator. *Id.* at p. 45 (52 TTABVUE 13).

Opposer submitted the Kushi deposition in a condensed format featuring multiple pages per sheet. Pursuant to Trademark Rule 2.123(g), 37 C.F.R. § 2.123(g), "[t]he deposition transcript must be submitted in full-sized format (one page per sheet), not condensed (multiple pages per sheet). We strongly recommend counsel familiarize themselves with the Trademark Rules of Practice.

B.   Applicant's testimony and evidence

1.   Notice of reliance on copies of foreign registrations;[29]

2.   Notice of reliance on a copy of Applicant's Registration No. 4877418 and registration file for the mark GJERGJ KASTRIOTI SKENDERBEU, in standard character form, for "brandy" printed from the USPTO Trademark Status and Document Retrieval (TSDR) system showing the current status of and title to the registration;[30]

3.   Notice of reliance on a copy of Applicant's Registration No. 5185075 and registration file for the mark SKËNDERBEU (stylized) for "beverages from wine distillates, namely, brandy and grape brandy" printed from the USPTO TSDR system showing the current status of and title to the registration;[31]

4.   Notice of reliance on a copy of Applicant's Registration No. 5189633 and registration file for the mark BALLË KAZANI SKRAPARI SKËNDERBEU, in standard character form, for "brandy" printed from the USPTO TSDR system showing the current status of and title to the registration;[32]

5.   Notice of reliance on a copy of the application file for abandoned application Serial No. 87315864 for the mark GJERGJ KASTRIOTI SKENDERBEU and design for brandy filed by GKS;[33]

---

[29] 56 TTABVUE 16-51.

[30] 56 TTABVUE 53-86.

[31] 56 TTABVUE 88-130.

[32] 56 TTABVUE 132-208.

[33] 56 TTABVUE 210-405. The application file includes a "Letter of Protest Memorandum" identifying Applicant's Registration No. 4877418 for the mark GJERGJ KASTRIOTI SKËNDERBEU as a potential bar to registration. 56 TTABVUE 380-381.

6.  Notice of reliance on a copy of the registration file for cancelled Registration No. 3218598 for the mark GJERGJ KASTRIOTI SKENDERBEU and design for liquor owned by GKS;[34]

7.  Notice of reliance on a copy of the "Letter of Protest" Applicant filed in application Serial No. 87315864 (abandoned) for the mark GJERGJ KASTRIOTI SKËNDERBEU BRANDY and design filed by GKS;[35]

8.  Notice of reliance on a copy of Applicant's website printed from the WayBack Machine website;[36]

9.  Notice of reliance on a copy of Opposer's website printed from the WayBack Machine website;[37]

10. Notice of reliance on copies of two Albanian court decisions;[38]

11. Testimony declaration of Sokol Hatellari, Applicant's Administrator;[39]

12. Testimony declaration of Stojce Josifovski, President of Overseas International, Inc., "an importer of spirituous liquors including SKËNDERBEU brandy sold in association with the SKËNDERBEU Marks" who formerly imported brandy products for GKS;[40] and

13. Testimony declaration of Agim Perovic, a court interpreter, certifying the translation of documents introduced in the Sokol Hatellari testimony declaration.[41]

---

[34] 56 TTABVUE 406-494. The USPTO cancelled the registration because GKS failed to file a declaration of use pursuant to Section 8 of the Trademark Act.

[35] 57 TTABVUE.

[36] 58 TTABVUE 8-12.

[37] 58 TTABVUE 13-19.

[38] 59 TTABVUE.

[39] 60 TTABVUE. Mr. Hatellari has been Applicant's Administrator since 1999. *Id.* at ¶ 8 (60 TTABVUE 10).

[40] 61 TTABVUE.

[41] 62 TTABVUE.

C.    Opposer's rebuttal testimony and evidence.

1.    Rebuttal testimony deposition of Stojce Josifovski;[42]

2.    Rebuttal testimony deposition of Jurgen Dashi, Administrator of GKS;[43]

3.    Rebuttal testimony declaration of Ekaterina Strati, a certified translator by the Ministry of Justice of the Republic of Albania, certifying the translation of documents attached to the Dashi declaration;[44]

4.    Rebuttal testimony declaration of Nua Ivezaj, Opposer's President;[45]

5.    Cross-examination deposition of Nua Ivezaj;[46]

6.    Notice of reliance on a copy of cancelled Registration No. 3218598 for the mark GJERGJ KASTRIOTI SKENDERBEU and design for liquor registered by GKS;[47]

7.    Notice of reliance on a copy of the file for abandoned application Serial No. 79010705 for the mark GJERGJ KASTRIOTI SKENDERBEU, in standard characters, for brandy filed by Applicant;[48]

8.    Notice of reliance on a copy of the file for abandoned application Serial No. 79180523 for the mark GJERGJ KASTRIOTI SKËNDERBEU BRANDY and design, for brandy, filed by GKS;[49] and

9.    Notice of reliance on a copy of the file for abandoned application Serial No. 87315864 for the mark GJERGJ KASTRIOTI

---

[42] 64 TTABVUE.

[43] 66 TTABVUE.

[44] 67 TTABVUE.

[45] 68 TTABVUE.

[46] 91 TTABVUE.

[47] 69 TTABVUE 10-16.

[48] 69 TTABVUE 18-28.

[49] 69 TTABVUE 30-75.

SKËNDERBEU BRANDY and design, for alcoholic beverages, except beer; brandy filed by GKS.[50]

## III. Entitlement to a Statutory Cause of Action[51]

Entitlement to a statutory cause of action, formerly referred to as "standing" by the Federal Circuit and the Board, is an element of the plaintiff's case in every inter partes case. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837 (Fed. Cir. 2020), *reh'g en banc denied*, 981 F.3d 1083, 2020 USPQ2d 11438 (Fed. Cir. 2020), *cert. denied*, 142 S.Ct. 82 (2021); *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014). To establish entitlement to a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute; and (ii) a reasonable belief in damage proximately caused by the registration of the mark. *Corcamore*, 2020 USPQ2d 11277, at *4. *See also Empresa Cubana*, 111 USPQ2d at 1062; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (TTAB 1982); *Spanishtown Enters.*, 2020 USPQ2d 11388, at *1.

---

[50] 69 TTABVUE 77-233.

[51] Even though we now refer to standing as entitlement to a statutory cause of action, our prior decisions and those of the Federal Circuit interpreting "standing" under §§ 1063 and 1064 remain applicable. *See Spanishtown Enters., Inc. v. Transcend Resources, Inc.*, 2020 USPQ2d 11388, at *2 (TTAB 2020).

Applicant has denied that Opposer will be damaged by registration.[52] Because Opposer has not pleaded and introduced into evidence a United States trademark registration or an application that has been refused registration by the USPTO, it must prove its entitlement to a statutory cause of action through other evidence. *See Lipton Indus.*, 213 USPQ at 189 ("The facts regarding standing, we hold, are part of a petitioner's case and must be affirmatively proved."); *Abraham's Seed v. John One Ten*, 1 USPQ2d 1230, 1233 (TTAB 1986) ("[M]ere allegations of a party's basis for standing are insufficient, without proof."). As noted above, Opposer pleads a claim of likelihood of confusion based on its position as the exclusive authorized distributor and brand agent in the United States for GKS, a company that Opposer claims has continuously sold GJERGJ KASTRIOTI SKËNDERBEU and SKËNDERBEU brandy in the United States since June 10, 2002.[53]

In May 2015, GKS, a producer of SKËNDERBEU brandy, contracted with Opposer to be the exclusive U.S. importer of its SKËNDERBEU brandy.[54] Ivezaj Rebuttal Declaration Exhibit 26 is a copy of the written agreement between GKS and Opposer.[55] Nua Ivezaj testified that "[Opposer] has been continuously selling [GKS's]

---

[52] 4 TTABVUE 3.

[53] Notices of Opposition ¶¶ 7 and 11 (1 TTABVUE 5-6 and 8-9).

[54] Kushi Testimony Dep., pp. 31-32 (52 TTABVUE 10). *See also* Kushi Exhibit 10 (52 TTABVUE 69) is a letter from Kushi on behalf of GKS to the Michigan State Liquor Authority advising the Authority that effective March 1, 2016, Opposer has been appointed the "Exclusive Importer and Brand Agent" for SKENDERBEU brandy and that any other agency appointments have been rescinded. *See also* Ivezaj Rebuttal Testimony Decl. ¶ 21 (68 TTABVUE 9) ("On May 1, 2015, [Opposer] takes over as the importer and distributor of [GKS's] product in the United States bearing the SKËNDERBEU Marks.").

[55] 68 TTABVUE 41-52.

products bearing the SKËNDERBEU Marks without interruption in Michigan since the date of approval by MLCC [Michigan Liquor Control Commission] on July 31, 2016 until today, August 7, 2020."[56]

The above-noted written agreement between GKS and Opposer provided as follows:

- GKS is "the owner and exclusive brand representative, sole source of production, exclusive brand marketing entity for [SKËNDERBEU brandy]."[57]

- GKS "desires to grant to [Opposer] an exclusive license as the Sole Brand Agent to sell and promote the sale of [SKËNDERBEU brandy] … in the United States of America."[58]

- Opposer "wishes to obtain from [GKS] the license to act as Sole Agent to represent, register, and protect [GKS's] Brands in all matter of Commerce in the United States."[59]

- "[GKS] hereby grants to [Opposer] and [Opposer] hereby accepts the appointment, permission and nontransferable right and license to market and sell at wholesale and retail [SKËNDERBEU brandy] in the [United States]."[60]

- "In addition, [GKS] grants to [Opposer] the nontransferable right and license to use the Product trade name, trademark, labels, copyrights, and other advertising media for the sole purpose of selling and marketing of [SKËNDERBEU brandy] in the [United States]."[61]

- "This Agreement does not constitute a partnership, joint venture or employment agreement between [GKS] and [Opposer]. Neither party shall represent itself or its organization as having any relationship to the other party other than described in this agreement and neither party shall hold

---

[56] Ivezaj Rebuttal Testimony Decl. ¶ 35 (68 TTABVUE 11).

[57] Ivezaj Testimony Decl. Exhibit 26 (68 TTABVUE 40 and 50).

[58] *Id.* (68 TTABVUE 40).

[59] *Id.*

[60] *Id.* at ¶ 1.1 (68 TTABVUE 42).

[61] *Id.*

itself out as having the power to make contracts in the name of or binding the other party hereto."[62]

● "[Opposer] acknowledges that [its] license to use the Products trade name, trademark, labels, copyrights and other advertising media is solely for the purpose of selling and marketing the Product within the [United States]" and that "upon termination of this Agreement, [Opposer's] right and license to use the Products' trade name, trademark, labels, copyrights, and other advertising media shall cease immediately and they shall be no longer utilized by [Opposer]."[63]

Opposer's position as the exclusive importer and brand agent of GKS is sufficient to establish a real interest in the marks because Section 13 of the Trademark Act gives any person who believes he will be damaged the right to oppose, and damage may well result to an exclusive distributor through loss of sales to it as well as to the owner of the mark. *See Moreno v. Pro Boxing Supplies, Inc.*, 124 USPQ2d 1028, 1033-34 (TTAB 2017) (plaintiff established standing based on a license granting plaintiff the exclusive right to use the trademark associated with the supplier of sporting goods for purposes of reselling the sporting goods); *Revlon, Inc. v. La Maur, Inc.*, 157 USPQ 602, 604 (TTAB 1968) ("But even if opposer was not the owner of the mark in this country, as the exclusive distributor of REPLIQUE products, opposer acquired rights in the mark sufficient to possess standing to oppose the registration of a mark which so resembles the foreign mark, when applied to an applicant's goods, as to cause confusion or mistake or deception in trade."). *Cf. William & Scott Co. v. Earl's*

---

[62] *Id.* at ¶ 1.2 (68 TTABVUE 42).

[63] *Id.* at ¶ 3.4 (68 TTABVUE 44). As discussed below, we find that GKS and Opposer continued their manufacturer-distributor relationship following the expiration of their written agreement, and there is nothing to suggest that following the expiration of the written agreement, Opposer had any rights in GKS's marks greater than those spelled out in the written agreement.

*Rests. Ltd.,* 30 USPQ2d 1870, 1873 n.2 (TTAB 1994) (dictum that a licensee or distributor has standing to oppose, stating that "a plaintiff may have standing in a case brought under Section 2(d) of the Trademark Act even if it does not claim ownership of the assertedly similar mark, or the right to control its use.").

Applicant argues, in essence, that because the written agreement between Opposer and GKS expired by its terms May 1, 2018 and there was no express testimony that it was renewed, the manufacturer-distributor relationship no longer exists and Opposer does not have an interest in this proceeding.[64] However, based on the testimony of Helidon Kushi, the former Administrator of GKS, and the rebuttal testimony of Nua Ivezaj regarding their distributorship relationship, we have no basis to find that those parties terminated their manufacturer-distributor relationship even if the formal written distribution agreement was not renewed.[65]

In addition, for example, during Mr. Kushi's cross-examination that took place on June 6, 2019, after the purported termination of the written agreement, Mr. Kushi testified that his company cooperated with Opposer in these proceedings by providing all of the documents in its archives.[66]

Moreover, as Opposer pointed out in its Reply Brief, Applicant never asked Mr. Kushi if GKS terminated the written agreement; rather, Applicant asked whether

---

[64] Applicant's Brief, pp. 8-11 (95 TTABVUE 13-16).

[65] Kushi Testimony Dep., p. 64 (52 TTABVUE 66) (GKS has not entered any subsequent agreements with any other distributor after Opposer); Ivezaj Rebuttal Testimony Decl. ¶ 35 (68 TTABVUE 11) (Opposer "has been continuously selling GKS's products bearing the SKËNDERBEU Marks without interruption in Michigan since the date of approval by MLCC on July 31, 2016 until today, August 7, 2020.").

[66] Kushi Testimony Dep., pp. 49-53 (52 TTABVUE 14-15).

there were any other agreements.[67] Finally, as noted above, Nua Ivezaj testified that "[Opposer] has been continuously selling [GKS's] products bearing the SKËNDERBEU Marks without interruption in Michigan since the date of approval by MLCC on July 31, 2016 until today, August 7, 2020."[68]

We find Opposer has established its statutory entitlement to a cause of action on the ground of likelihood of confusion.

Once a plaintiff has shown that it is entitled to oppose on one ground, it has the right to assert any other ground in the opposition proceeding. *See Poly-America, L.P. v. Ill. Tool Works Inc.*, 124 USPQ2d 1508, 1512 (TTAB 2017) (if petitioner can show standing on the ground of functionality, it can assert any other grounds, including abandonment) , *aff'd*, No. 3:18-cv-00443-C (N.D. Tex. Oct. 29, 2019), *appeal dismissed*, No. 19-11180 (5th Cir. Feb. 4, 2020); *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1479 (TTAB 2017) (standing established based on surname claim sufficient to establish standing for any other ground); *Luxco, Inc. v. Consejo Regulador del Tequila, A.C.*, 121 USPQ2d 1477, 1481 (TTAB 2017) (opposer established its standing as to genericness and was entitled to assert any other ground).

---

[67] Opposer's Reply Brief, p. 10 (96 TTABVUE 12).

[68] Ivezaj Rebuttal Testimony Decl. ¶35 (68 TTABVUE 11).

IV.    Likelihood of Confusion

    A.    Priority

Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), permits opposition based on ownership of "a mark or trade name previously used in the United States … and not abandoned." Opposer must prove its priority as of a date that is before any priority date that may be claimed and proven by Applicant.

Applicant's constructive use priority date is August 9, 2016, the date it filed its applications that have been opposed in these proceedings. 15 U.S.C. § 1051(a). *See Exec. Coach Builders, Inc. v. SPV Coach Co*, 123 USPQ2d 1175, 1180 (TTAB 2017) (citing *Syngenta Crop Prot., Inc. v. Bio-Chek, LLC*, 90 USPQ2d 1112, 1119 (TTAB 2009); *Media Online Inc. v. El Clasificado Inc.*, 88 USPQ2d 1285, 1288 (TTAB 2008)). However, both in its applications and in this proceeding, Applicant claims an earlier priority date based on use.[69]

Sokol Hatellari, Applicant's Administrator, testified that "Applicant commenced importation and sale of its SKËNDERBEU cognac brandy bearing the SKËNDERBEU Marks and SKËNDERBEU Label in connection with [Applicant's] Products at least as early as March 2004, and has continued importation and sale of its SKËNDERBEU cognac brandy into the State of Michigan as well as to other states of the United States."[70] However, in rebuttal, Nua Ivezaj, Opposer's President and

---

[69] In the applications, Applicant claims June, 2004, as its date of first use.

[70] Hatellari Testimony Decl. ¶ 76 (60 TTABVUE 37). *See also id.* at ¶¶ 93, 97, 108 (60 TTABVUE 40, 41, 43) (same).

Applicant's former importer, testified that Applicant's products "did not arrive in the United States until April 2004."[71] Applicant has not established March 2004 as its date of first use by clear and convincing evidence. We will use April 2004 as Applicant's priority date because that date Applicant proved by clear and convincing evidence.[72]

Opposer must establish proprietary rights in its pleaded common-law marks that precede Applicant's actual or constructive use of its involved marks. *See Exec. Coach Builders*, 123 USPQ2d at 1180 (citing *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981); *Larami Corp. v. Talk to Me Programs Inc.*, 36 USPQ2d 1840, 1845 (TTAB 1995)). In other words, because unregistered marks are not entitled to the presumptions established by Section 7(b) and (c) of the Trademark Act, 15 U.S.C. § 1057(b) and (c), it is Opposer's burden to demonstrate that it owns a trademark that it used prior to Applicant's first use or constructive use of its mark. *Exec. Coach Builders*, 123 USPQ2d at 1180 (citing *Life Zone Inc. v. Middleman Grp. Inc.*, 87 USPQ2d 1953, 1959 (TTAB 2008)).

---

[71] Ivezaj Rebuttal Testimony Decl. ¶ 50 (68 TTABVUE 13).

[72] "Where an applicant seeks to prove a date earlier than the date alleged in its application, a heavier burden has been imposed on the applicant than the common law burden of preponderance of the evidence." *Hydro-Dynamics, Inc. v. George Putnam & Co.*, 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987). Proof of an earlier priority date requires clear and convincing evidence. *Id.*; *see also Martahus v. Video Duplication Servs. Inc.*, 3 F.3d 417, 27 USPQ2d 1846, 1852 n.7 (Fed. Cir. 1993). "Clear and convincing" proof refers to evidence of use which is not characterized by contradictions, vagueness or inconsistencies. *McQuay-Norris Mfg. Co. v. H-P Tool Mfg. Corp.*, 141 USPQ 405, 407 (TTAB 1964) ("when regarded in toto, [Applicant's record in this case] is a clear, convincing and circumstantial showing of earlier trademark use than that originally alleged in the applications.").

Opposer may not rely on GKS's use of the involved marks to prove Opposer's priority, regardless of privity. *See Moreno*, 124 USPQ2d at 1036 (a licensee cannot rely on its licensor's use to prove priority). In *Moreno*, Julie Moreno petitioned to cancel the registration of Pro-Boxing's CASANOVA mark for boxing equipment based on the common law priority of use date of her licensor, the non-party Deportes Casanova. Moreno was its exclusive licensee in the United States. The Board held that although Moreno could establish her entitlement to a statutory cause of action, Moreno could not establish priority of use based on use by her licensor Deportes Casanova because this would improperly recognize trademark ownership rights in a licensee.

> Allowing a licensee to claim priority for itself in an *inter partes* proceeding based on the licensor's use of the mark (whether through the license or otherwise), could result in a licensee being able to claim *de facto* ownership of the licensed mark. The license agreement, relied upon by Moreno and reproduced above, states that it gives Moreno "no ownership rights in the Intellectual Property [i.e., the marks] other than the license granted hereby." Due to this express disavowal of any transfer to Moreno of ownership rights in CASANOVA, we cannot view the license as tantamount to an assignment of the mark, which might have allowed Moreno to assert whatever priority rights Deportes Casanova may have in the United States in the mark CASANOVA. *Cf. William & Scott* [*Co. v. Earl's Rests. Ltd.*,] 30 USPQ2d [1870] at 1873 [(TTAB 1994)] (discussing how use of an assigned mark by the assignor may inure to the benefit of the assignee, including "[f]or example, if [the assignor] is a licensee of [the assignee]"). We find that Moreno, a mere licensee, cannot rely on her licensor's use to prove priority.

*Moreno*, 124 USPQ2d at 1036.

Similarly, in *Chem. N.Y. Corp. v. Conmar Form Sys., Inc.*, 1 USPQ2d 1139, 1142 (TTAB 1986), which involved two opposers in a licensor/licensee relationship, the Board noted that the opposer in the position of licensor was entitled to rely on its pleaded registrations and the use made by its licensee to prove priority. However, because the opposer in the position of licensee was not the owner of the pleaded registrations, it could not rely on the pleaded registrations to prove priority. Thus, it was incumbent upon the opposer/licensee to prove priority through actual use. The analysis focused on the opposer/licensee's use, without any analysis of or reference to the opposer/licensor's use.

As in *Moreno*, the written agreement and the manufacturer-distributor relationship between GKS and Opposer do not give Opposer any ownership interest in the SKËNDERBEU marks beyond a license permitting Opposer to use the marks as the distributor of GKS SKËNDERBEU brandy. "[A]s between a manufacturer and distributor, the manufacturer is presumed to own a trademark applied to the goods," *Fuji Med. Instruments Mfg. Co. v. Am. Crocodile Int'l Grp., Inc.*, 2021 USPQ2d 831, at *18 (TTAB 2021) (citations omitted), *civil action filed*, No. 1:21-cv-01197-RDA-TCB (E.D. Va. Oct. 28, 2021), and a party "cannot rely solely on its status as [an] exclusive U.S. distributor for its ownership of the . . . mark." *Id.* Thus, Opposer, as a licensee/distributor has no ownership rights in the SKËNDERBEU marks, leaving it without the ability to rely on the use of the SKËNDERBEU marks by GKS for the proving priority.

With respect to Opposer's first use of the SKËNDERBEU marks as the GKS distributor, Nua Ivezaj testified as follows:

- "On June 14, 2016, [Opposer] received its first shipment of GKS goods bearing the SKËNDERBEU Marks."[73]

- "On July 16, 2016, MLCC informs [Opposer] that GKS's Skenderbeu Brandy is approved for sale by the MLCC Board and assigns the new Owner/Agent as [Opposer] effective July 31, 2016 when Overseas International's registration of SKËNDERBEU KONJAK BRANDY was finally delisted."[74]

- "[Opposer] has been continuously selling GKS's products bearing the SKËNDERBEU marks without interruption in Michigan since the date of approval by MLCC on July 31, 2016."[75]

Thus, Opposer's priority date is July 31, 2016, subsequent to Applicant's April 2004 priority date.

Opposer argues that based on Section 2.1 of the Agreement between GKS and Opposer, Opposer has the power and authority to assert the trademark rights of GKS.[76] Section 2.1 of the Agreement reads, so far as pertinent, as follows:

> During the life of this Agreement, [GKS] shall maintain in full force and effect Federal and International registrations of its trade name, product name and trademarks. … Furthermore as the Sole Agent & Sole Source Importer for [the United States], [Opposer] is hereby authorized by [GKS] to act on [GKS's] behalf and to protect [GKS's] Trademark in United States commerce to the benefit of [GKS].[77]

---

[73] Ivezaj Testimony Decl. ¶ 34 (68 TTABVUE 11).

[74] Ivezaj Testimony Decl. ¶ 31 (68 TTABVUE 10).

[75] Ivezaj Testimony Decl. ¶ 35 (68 TTABVUE 11).

[76] Opposer's Reply Brief, p. 18 (96 TTABVUE 20).

[77] Ivezaj Testimony Decl. Exhibit 26 (68 TTABVUE 42-43).

The authorization granted to Opposer to act on GKS's behalf existed only "[d]uring the life of this Agreement." Even if we assume that Opposer's authorization survived the expiration of "this Agreement,"[78] it only provides an additional basis for Opposer to claim an entitlement to file an opposition. To the extent Opposer argues this provision also gives Opposer the right to rely on GKS's use of the marks to prove priority, that argument is foreclosed by our holding in *Moreno*. Opposer argues, in essence, that as the distributor/licensee, it is entitled to rely on its supplier/licensor's use to prove priority (i.e., that the licensor's use inures to the benefit of the licensee) but that would be akin to claiming a transfer of ownership and there has been no such transfer between Opposer and GKS. GKS and Opposer cannot contract around the legal principle that a licensor's use does not inure to the benefit of the licensee.

Because Opposer, a distributor/licensee, may not rely on its manufacturer/licensor's earlier use to prove priority, and there is no evidence in the record that Opposer used GKS's marks prior to Opposer's entry into the written agreement with GKS, *see Moreno*, 124 USPQ2d at 1035 & n.27,[79] Opposer has not proven priority and cannot prevail on its Section 2(d) of the Trademark Act likelihood of confusion claim. Therefore, we dismiss the Section 2(d) claim.

---

[78] Opposer has noted that GKS has filed Cancellation No. 92076101 against certain registrations owned by Applicant (93 TTABVUE 39 and 96 TTABVUE 15) implying that Opposer no longer has the right to act on behalf of GKS in trademark matters.

[79] Opposer's only "use" of the marks prior to its entry into the agreement with GKS was as **Applicant's** United States distributor and that use inures to the benefit of Applicant, not GKS.

## V.    Fraud

As noted at the beginning of this decision, Opposer alleges, "Applicant has made a false or fraudulent declaration or representation of its ownership of the rights to the [marks],"[80] including,

- Applicant was aware GKS was selling GJERGJ KASTRIOTI SKËNDERBEU brandy before Applicant filed its application;[81]

- Applicant fraudulently referred to its product as "cognac";[82] and

- Applicant fraudulently claimed ownership of the rights to the marks GJERGJ KASTRIOTI SKËNDERBEU and SKËNDERBEU.[83]

Opposer did not plead the fraud claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure ("In alleging fraud or mistake, party must state with particularity the circumstances constituting fraud or mistake."). A plaintiff claiming that the declaration or oath in a defendant's application for registration was executed fraudulently, in that there was another use of the same or a confusingly similar mark at the time the oath was signed, must allege particular facts which, if proven, would establish that: (1) there was in fact another use of the same or a confusingly similar mark at the time the oath was signed; (2) the other user had legal rights superior to applicant's; (3) applicant knew that the other user had rights in the mark superior to applicant's, and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing

---

[80] Notices of Opposition ¶11(d) (1 TTABVUE 11).

[81] Notices of Opposition ¶ 11(c) (1 TTABVUE 10).

[82] *Id.*

[83] *Id.* at ¶ 11(d) (1 TTABVUE 11).

otherwise; and that (4) applicant, in failing to disclose these facts to the U.S. Patent and Trademark Office, intended to procure a registration to which it was not entitled. *See Qualcomm Inc. v. FLO Corp.*, 93 USPQ2d 1768, 1770 (TTAB 2010).

On the other hand, Applicant did not file a motion to dismiss the fraud claim under Fed. R. Civ. P. 12(b)(6) on the ground that Opposer failed to state a claim for which relief can be granted or, in the alternative, file a motion for a more definite statement under Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.").

Nevertheless, Applicant argues, in its brief, that "Opposer thus *has failed to plead any intent to deceive on the part of Applicant*, an element required to be pled with specificity." Applicant's Brief, pp. 16 (95 TTABVUE 21). Even though Opposer's fraud claim lacked the necessary specificity, Applicant was on notice that a fraud claim was asserted, did not request more particularity, defended against it, and argued, in its brief, that Opposer failed to prove Applicant knowingly made a false misrepresentation of fact. *Id.*

Accordingly, we find the parties tried Opposer's fraud claim by implied consent pursuant to Fed. R. Civ. P. 15(b)(2) and we construe the pleadings to be appropriately amended. *See Citigroup Inc. v. Capital City Bank Grp., Inc.*, 94 USPQ2d 1645, 1650, 1655-56 (TTAB 2010) (Board deemed unpleaded affirmative defense of tacking by prior use of an unpleaded mark to have been tried by implied consent pursuant to Fed. R. Civ. P. 15(b)), *aff'd*, 637 F.3d 1344, 98 USPQ2d 1253 (Fed. Cir. 2011); *Nextel*

*Commc'n, Inc. v. Motorola, Inc.*, 91 USPQ2d 1393, 1399 (TTAB 2009) (although

opposer did not plead issue preclusion as a ground for opposition, because applicant

did not object to opposer's assertion of that ground in its brief and, in fact, addressed

the issue in its brief, the Board deemed the pleadings to be amended pursuant to Fed.

R. Civ. P. 15(b)).

In its brief, Opposer contends that Applicant knowingly made false statements

with the intent to deceive the USPTO because it had "actual knowledge in 2005 of

GKS's pending application to register the trademark and design for 'Gjergj Kastrioti

Skenderbeu,'" filed June 8, 2004.[84] Opposer explains its contention as follows:

- Less than a year later, on April 28, 2005, Applicant filed its application to register the mark GJERGJ KASTRIOTI SKENDERBEU for the same goods as in the above-noted application filed by GKS.[85]

- Applicant did not oppose the application filed by GKS, nor did Applicant seek to cancel the registration.[86]

- "On April 29, 2015, [Applicant's] international registration, which formed the basis (filing basis 66A) for its 2005 trademark application was cancelled. After cancellation of its international registration, [Applicant] filed one application on May 20, 2015 to register the word mark 'Gjergj Kastrioti Skenderbeu'. This was followed by the filing of four applications

---

[84] Opposer's Brief, p. 29 (93 TTABVUE 30) citing a copy of cancelled Registration No. 3218598 for the mark GJERGJ KASTRIOTI SKËNDERBEU and design owned by Kantina e Pijeve Gjergj Kastrioti Skenderbeu (69 TTABVUE 10-16).

[85] Opposer's Brief, p. 29 (93 TTABVUE 30) citing a copy of Applicant's abandoned application Serial No. 79010705 for the mark GJERGJ KASTRIOTI SKENDERBEU for brandy. (69 TTABVUE 18-28). The USPTO identified the underlying pending application for Registration No. 3218598 for the mark GJERGJ KASTRIOTI SKËNDERBEU and design owned by GKS as a potential bar to the registration of Applicant's mark. (69 TTABVUE 23-26).

[86] Opposer's Brief, p. 29 (93 TTABVUE 30). Opposer did not provide any citation to record to support these facts.

on August 9, 2016 in an effort to register four additional trademarks with variations of Gjergj Kastrioti Skenderbeu."[87]

> At the time these five applications were filed, [Applicant] knew of GKS'[s] ownership and prior registration of the mark. The Trademark Office had also provided [Applicant] with the specimen of GKS'[s] label for the word and design mark "Gjergj Kastrioti Skenderbeu". Despite this actual knowledge and possession of GKS'[s] specimen, the five applications for trademarks that [Applicant] has filed since 2015 have specimen labels that are virtually identical to the GKS specimen.[88]

● Mr. Hatellari testified, "[Applicant] first became aware that GKS was exporting directly to the United States in May/June 2016."[89]

> Despite [Applicant's] knowledge of the 2005 GKS trademark application and subsequent registration, [Applicant] conveniently omit[s] this significant information from Mr. Hatellari's Declaration to intentionally mislead the USPTO. Mr. Hatellari's statement that [Applicant] first became aware of GKS exporting to the United States in May or June 2016 is patently false. The original filing basis for GKS' 2004 trademark application was 1B. A Statement of Use was filed on October 17, 2006. (citation omitted). The Statement of Use was accepted and the mark was registered to GKS on March 13, 2007 on a current basis of 1A. (citation omitted). [Applicant] knew for over 10 years of [Kantina e Pijeve Gjergj Kastrioti Skenderbeu's] intent to use and actual use of the trademark on [Kantina e Pijeve Gjergj Kastrioti Skenderbeu] brandy exported to the United States contrary to Mr. Hatellari's Declaration in ¶113.[90]

● Opposer asserts that Nua Ivezaj, Opposer's President, informed Mr. Hatellari around 2002 that GKS was exporting Skenderbeu Brandy to the

---

[87] Opposer's Brief, p. 30 (93 TTABVUE 31). Opposer did not provide any citation to record to support these facts.

[88] Opposer's Brief, p. 30 (93 TTABVUE 31).

[89] Opposer's Brief, p. 31 (93 TTABVUE 32) citing Hatellari Testimony Decl. ¶ 113 (60 TTABVUE 44).

[90] Opposer's Brief, p. 31 (93 TTABVUE 32).

U.S.[91] Nevertheless, Mr. Ivezaj and Opposer began a business relationship with Applicant.[92]

Sokol Hatellari explained to Mr. Ivezaj that Applicant had the rights to manufacture and sell GJERGJ KASTRIOTI SKËNDERBEU and SKËNDERBEU brandy. Mr. Hatellari testified as follows:

82. Specifically, I then informed Mr. Ivezaj that [Applicant] is the legal successor of the Food Combine "ALI KELMENDI" and its intellectual property. I further explained to Mr. Ivezaj that the State Food Combine "ALI KELMENDI" had been the inventor of the secret formula for the production of cognac "GJERGJ KASTRIOTI SKËNDERBEU" and the first and only owner of the trademark of the same name, "GJERGJ KASTRIOTI SKËNDERBEU", registered since 1993.

83. I then informed Mr. Ivezaj that [Applicant] is the only company authorized by the Albanian State to produce and trade the products of the brands "GJERGJ KASTRIOTI SKËNDERBEU".

84. I then further informed Mr. Ivezaj of, and made available to him, the contract for the sale and purchaser of movable and immovable property, which clearly states that the owner, the Albania State, sold for [Applicant] together with the physical object and the trademark "GJERGJ KASTRIOTI SKËNDERBEU" cognac, together with the secret formula for the production of the cognac.

85. I further showed Mr. Ivezaj all the documentation for the transfer of ownership of the trademark to [Applicant],

---

[91] Opposer's Brief, p. 31 (93 TTABVUE 32) citing Ivezaj Rebuttal Testimony Decl. ¶ 6 (68 TTABVUE 70) ("I explained to Mr. Hatellari that Skenderbeu Brandy was already being imported to the USA from [Kantina e Pijeve Gjergj Kastrioti Skenderbeu] in Durres, but Mr. Hatellari told me that he also had rights to the Skenderbeu Brand and that he too could sell it."), and Ivezaj Cross-examination Dep., p. 25 (91 TTABVUE 26) (same).

Nua Ivezaj also testified that he registered Applicant's product with the Michigan Liquor Control Commission as GJERGJ KASTRIOTI VS because Overseas International had previously registered SKËNDERBEU Konjak. Ivezaj Rebuttal Testimony Decl. ¶ 8 (68 TTABVUE 7).

[92] Ivezaj Rebuttal Testimony Decl. ¶ 7 (68 TTABVUE 70).

including Albanian Trademark Registration No. 45 "GJERGJ KASTRIOTI SKËNDERBEU konjak" and the Albania patent of invention with registration number 126: "Alcoholic beverages and its production process", as well as for the new Albania Trademark Registration No. 8148, of the trademark "GJERGJ KASTRIOTI SKËNDERBEU" – word, class 33 for cognac.

86. Mr. Ivezaj expressed interest in discussing, as a start, the importation into the United States, of two products: cognac "GJERGJ KASTRIOTI SKËNDERBEU" 750 ML and "SKËNDERBEU" grape brandy Moskat.[93]

———

94. During the period from 2004-2016, [Applicant] continued normally to export GJERGJ KASTRIOTI SKËNDERBEU brandy products bearing the SKËNDERBEU Marks and SKËNDERBEU Label for sale to the USA, and Opposer, served as importer for such sales and importation in the State of Michigan, and received and paid for [Applicant's] GJERGJ KASTRIOTI SKËNDERBEU brandy products.[94]

———

98. During the period from 2003-2016, [Opposer] and Mr. Nua V. Ivezaj never challenged [Applicant's] right to use the SKËNDERBEU Marks and the SKËNDERBEU Label in U.S. commerce.[95]

Jurgen Dashi, the current Administrator of GKS, testified that the Albanian state regime authorized both GKS and Applicant's predecessor-in-interest "to produce, offer for sale and trade brandy products under the sign/mark "Gjergj Kastrioti

---

[93] Hatellari Testimony Decl. ¶¶ 82-86 (60 TTABVUE 38-39).

[94] Hatellari Testimony Decl. ¶ 94 (60 TTABVUE 41).

[95] Hatellari Testimony Decl. ¶ 98 (60 TTABVUE 41).

Skenderbeu."[96] The testimony did not indicate the territorial extent, if any, of either

authorization by the Albanian state regime.

> Both the state-owned company [i.e., "Kantina e Veres"/"Kantina e Pijeve Gjergj Kastrioti Skenderbeu Durres" and "Kombinati Ushqimor Ali Kelmendi Tirane"] were duly authorised [sic] from the state regime to produce, offer for sale and trade the brandy products under the sign/mark "Gjergj Kastrioti Skenderbeu"". (Citation omitted).

> Based on the above-referenced document Exhibit Trial 17, I would like to bring to your attention that the Ministry of Agriculture and Food has sent an official letter to the Chamber of Trade and Industry [i.e., in that time, the Chamber of Trade and Industry was the competent and responsible state body for the registration of marks) whereby it is first mentioned and confirmed that the "Skenderbeu" brandy was produced by both the state-owned companies: "Food Combine Ali Kelmendi Tirane" and "Kantina e Pijeve Gjergj Kastrioti Durres."[97]

Mr. Dashi's testimony is corroborated by Applicant's ownership of four Albanian

trademark registrations, suggesting that Applicant acted pursuant to the

authorization, at least in Albania, and that Applicant's belief in its entitlement to use

the marks in the U.S. was reasonable. One of the registrations, Albanian Registration

No. 45, is for the mark GJERJ KASTRIOTI SKËNDERBEU (words and design) for

---

[96] Dashi Rebuttal Testimony Decl. ¶ 4 (66 TTABVUE 10).

[97] *Id.*

Sokol Hatellari testified that Applicant is the successor-in-interest to the rights of Food Combine Ali Kelmendi Tirane. Hatellari Testimony Decl. ¶¶ 11, 20-23 (60 TTABVUE 10, 13- 14).

brandy.[98] In addition, Applicant is the owner of Albanian Registration Nos. 10313, 11527 and 11530 for variations of GJERJ KASTRIOTI SKËNDERBEU.[99]

We reproduce below the mark in Registration No. 10313.[100]



We reproduce below the mark in Registration No. 11527.[101]



---

[98] Hatellari Testimony Decl. ¶ 26 and Exhibits 3 and 4 (60 TTABVUE 15 and 82; 56 TTABVUE 16-27).

[99] *Id.* at ¶ 59 (60 TTABVUE 27-28).

[100] *Id.* at ¶ 59 (60 TTABVUE 27-28) and 56 TTABVUE 32.

[101] *Id.* at ¶ 59 (60 TTABVUE 27-28) and 56 TTABVUE 48.

We reproduce below the mark in Registration No. 11530.[102]



GKS never challenged the validity of Applicant's Albanian trademark registrations.[103]

Finally, in its reply brief, Opposer concluded as follows:

> The representation to the USPTO that no other person had a right to use the mark was knowingly false. That representation was material, and as pled by Opposer, the Applicant knew that GKS had the senior priority rights to use the mark in commerce. Lastly, it is clear that the representation was made to deceive the USPTO.[104]

As best we understand Opposer's fraud claim, Opposer contends that Applicant knowingly made false material statements in the declarations of the subject applications. There are two assertions of false material representations:

---

[102] *Id.* at ¶ 59 (60 TTABVUE 27-28) and 56 TTABVUE 42.

[103] *Id.* ¶ 60 (60 TTABVUE 28).

[104] Opposer's Reply Brief, p. 15 (96 TTABVUE 17).

● "Mr. Hatellari and [Applicant] had actual knowledge in 2005 of GKS'[s] pending application to register the trademark and design for 'Gjergj Kastrioti Skenderbeu'";[105] and

● When Applicant filed the applications at issue in these proceedings, it "knew of GKS'[s] ownership and prior registration of the mark."[106]

In summary, Opposer asserts the following:

> Despite Mr. Hatellari's and [Applicant's] knowledge of the 2004 GKS trademark application and subsequent registration, [Applicant] conveniently omit[s] this significant information from Mr. Hatellari's Declaration to intentionally mislead the USPTO. … [Applicant] knew for over 10 years of GKS'[s] intent to use and actual use of the trademark on [GJERGJ KASTRIOTI SKËNDERBEU] brandy exported to the United States contrary to Mr. Hatellari's Declaration in ¶113.[107]

Opposer is referring to Registration No. 3218598 for the mark GJERGJ KASTRIOTI SKËNDERBEU and design for liquor. The USPTO cancelled the registration effective October 18, 2013, for failure to file a declaration of use under Section 8 of the Trademark Act, two years and ten months before Applicant filed the applications at issue. "[A] cancelled registration is of no evidentiary value as to the scope of protection to be afforded to opposer's claimed marks." *Nat'l Pork Bd. v. Supreme Lobster and Seafood Co.*, 96 USPQ2d 1479, 1484 (TTAB 2010) (citing *Action Temp. Servs. Inc. v. Labor Force Inc.*, 870 F.2d 1563, 10 USPQ2d 1307, 1309 (Fed. Cir. 1989) ("a cancelled registration does not provide constructive notice of anything.")). *See also Kemi Organics, LLC v. Gupta*, 126 USPQ2d 1601, 1606 (TTAB

---

[105] Opposer's Brief, p. 29 (93 TTABVUE 30).

[106] Opposer's Brief, p. 30 (93 TTABVUE 31).

[107] Opposer's Brief, p. 31 (93 TTABVUE 32).

2018) (a cancelled registration is only evidence that the registration issued, and is not evidence of use of the mark at any time); *Sinclair Mfg. Co. v. Les Parfums de Dana, Inc.*, 191 USPQ at 294 (a cancelled registration is not evidence that a mark has ever been used).

"A canceled registration cannot prevent a party from being a 'lawful user' of a mark when that party's use is subsequent to the cancellation of the federal registration." *Action Temp. Servs.*, 10 USPQ2d at 1309. Thus, Applicant's knowledge of cancelled Registration No. 3218598, by itself, does not show that any of the averments in Mr. Hatellari's declaration in the subject applications were false material statements made with the intent to deceive the USPTO.

The remaining basis for Opposer's fraud claim is that Applicant knew of GKS's right to use the marks GJERGJ KASTRIOTI SKËNDERBEU and SKËNDERBEU, so that Mr. Hatellari's statements in his declarations that Applicant knew of no other with the right to use the marks were knowingly false. Such a claim requires proof that, inter alia, the declarant knew that GKS had the superior right. *See Ohio State Univ. v. Ohio Univ.*, 51 USPQ2d 1289, 1293 (TTAB 1999).

Fraud in procuring or maintaining a trademark registration occurs when an applicant for registration or a registrant in a declaration of use or a renewal application knowingly makes specific false, material representations of fact with the intent of obtaining or maintaining a registration to which it is otherwise not entitled. *See In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938 (Fed. Cir. 2009); *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 1 USPQ2d 1483, 1484 (Fed. Cir. 1986);

*Milwaukee Elec. Tool Corp. v. Freud Am., Inc.*, 2019 USPQ2d 460354, at *25 (TTAB 2019) , *civil action filed*, No. 1:20-cv-00902-RGA (D. Del. Feb. 3, 2020) (originally filed in M.D.N.C.). "[T]he very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *In re Bose Corp.*, 91 USPQ2d at 1939 (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981)). *See also Chutter, Inc. v. Great Mgm't Grp., LLC*, 2021 USPQ2d 1001, at *12 (TTAB 2021) ("A party alleging fraud in the procurement or maintenance of a registration bears the heavy burden of proving fraud with clear and convincing evidence."), *appeal docketed*, No. 22-1212 (Fed. Cir. Dec. 2, 2021).

Based on the evidence of record, Opposer has not proven by clear and convincing evidence that Applicant knew that GKS had superior rights in the marks when Applicant filed and prosecuted the applications. For example, Applicant is the owner of U.S. Registration No. 4877418 for the mark GJERGJ KASTRIOTI SKËNDERBEU, in standard characters, for brandy, registered December 29, 2015, prior to the filing date of the applications at issue.[108] If Applicant registered GJERJ KASTRIOTI SKËNDERBEU with no objection from GKS, Mr. Hatellari could reasonably have

---

[108] 56 TTABVUE 53.

Applicant also owns International Registration No. 848976 for the mark GJERGJ KASTRIOTI SKËNDERBEU for, inter alia, brandy, registered April 28, 2005. (56 TTABVUE 445-451).

believed Applicant had the exclusive right to use the SKENDERBEU marks in the United States.

In addition, as noted above, the current Administrator of GKS testified that the Albanian state regime authorized both GKS and Applicant's predecessor-in-interest "to produce, offer for sale and trade brandy products under the sign/mark 'Gjergj Kastrioti Skenderbeu,'"[109] without specifying the respective territorial boundaries, if any. In this regard, Applicant owns four Albanian registrations for variations of the mark GJERJ KASTRIOTI SKËNDERBEU for brandy that GKS did not challenge. These circumstances also may have contributed to Mr. Hatellari reasonably believing that Applicant was entitled to the exclusive right to use the marks in the United States.

Even if we assume, arguendo, that the relevant statement in the Hatellari application declarations was false, this record does not establish that Mr. Hatellari believed it to be false. Therefore, without proof of the requisite intent to deceive the USPTO, Mr. Hatellari's statements in his declarations, standing their own, do not support a claim of fraud. *See Chutter*, 2021 USPQ2d 1001, at *12 ("For example, the Board will not find fraud if the evidence shows that a false statement was made with a reasonable and honest belief that it was true, rather than an intent to mislead the USPTO into issuing a registration to which the applicant was not otherwise entitled."); *Alcan Aluminum Corp. v. Alcar Metals Inc.*, 200 USPQ 742, 746 (TTAB 1978), *quoting Rogers Corp. v. Fields Plastics & Chem., Inc.*, 176 USPQ 280 (TTAB

---

[109] Dashi Rebuttal Testimony Decl. ¶ 4 (66 TTABVUE 10).

1972) ("there is a material legal distinction between a 'false' representation and a 'fraudulent' one, the latter involving ... an intent to deceive, whereas the former may be occasioned merely by a misunderstanding, an inadvertence, a mere negligent omission, or the like."); *see also Adolphe Lafont, S.A. v. S.A.C.S.E. Societa Anzioni Confezioni Sportive Ellera, S.p.A.*, 228 USPQ 589, 593 (TTAB 1985).

For example, in addition to the testimony discussed above, Mr. Hatellari testified that

- The Albanian government formed Applicant's predecessor-in-interest as the original producer of GJERGJ KASTRIOTI SKËNDERBEU brandy;[110]

- Applicant "is the only company legally authorized by the competent Albanian governmental authorities for the production, bottling and packaging of 'GJERGJ KASTRIOTI SKËNDERBEU' cognac";[111]

- GKS copied Applicant's SKËNDERBEU marks and counterfeited the brandy products;[112]

- "Since 2003, [Applicant] relied upon information and representation from [Opposer] and Mr. Nua V. Ivezaj that GKS was not exporting its counterfeit brandy products to the United States.";[113] and

- During the period from 2003-2016, GKS never challenged [Applicant's] right to use the SKËNDERBEU Marks and the SKËNDERBEU Label in U.S. commerce."[114]

Accordingly, even if we assume these statements made in the application declarations are false, we have no reason to infer that Mr. Hatellari believed them to be false. Therefore, we cannot find that Mr. Hatellari intended to deceive the USPTO.

---

[110] Hatellari Decl. ¶¶ 20-22, 27, 29-35 (60 TTABVUE 13-17).

[111] *Id.* at ¶ 68 (60 TTABVUE 34).

[112] *Id.* at ¶¶ 74-75 (60 TTABVUE 36-37).

[113] *Id.* at ¶ 96 (60 TTABVUE 41).

[114] *Id.* at ¶ 99 (60 TTABVUE 41).

*See Bose*, 91 USPQ2d at 1941 ("When drawing an inference of intent, 'the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive.'") (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 9 USPQ2d 1384, 1392 (Fed. Cir. 1988) (en banc)); *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 41 USPQ2d 1369, 1373 (Fed. Cir. 1997) (while the verification was false regarding applicant's exclusive right to use of the mark, because of the complex corporate relationship with another party using the same mark in another territory, the verification was not fraudulent).

In *Metro Traffic Control*, the misstatements did not represent a "conscious effort to obtain for his business a registration to which he knew it was not entitled" because "the complex factual situation in this case apparently left [signer] Mr. Schwartz with an unclear understanding of the legal implications of his statement." *Id.* Likewise, in these proceedings the legal right to use the SKËNDERBEU marks emanating from Applicant's prior U.S. registration, as well as from the rights granted by the Albanian government, is both complex and confusing, potentially leaving Mr. Hatellari with an unclear understanding of his company's trademark rights.

The rebuttal testimony of Nua Ivezaj and Jurgen Dashi does not persuade us otherwise. Neither rebuttal witness identifies any knowingly false material misrepresentations of fact that Mr. Hatellari made to the USPTO that would lead the USPTO to grant Applicant a registration to which it was not entitled. After having its rebuttal witnesses testify about a litany of purportedly false statements made by Applicant about other matters, it is clear Opposer would have the Board infer that

Applicant and its representatives are incapable of ever telling the truth and, therefore, the cited statements in the application declarations must ipso facto be fraudulent. However, as noted above, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *In re Bose Corp.*, 91 USPQ2d at 1939 (quoting *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ at 1044); *Asia W. Classics B.V. v. Selkow*, 92 USPQ2d 1478, 1480 (TTAB 2009). The rebuttal testimony of Messrs. Ivezaj and Dashi falls far short of meeting that burden.

We dismiss Opposer's fraud claim.

## VI.  Decision

We dismiss the likelihood of confusion and fraud claims asserted in these oppositions in their entirety.